## HOLTON vs. THE CITY OF MILWAUKEE.

*Charter of Milwaukee* — *Condemnation of land for highway* — *Assessment of damages and benefits* — *Right to offset benefits.*

1. Under the charter of Milwaukee and amendatory acts, the proceedings for determining the value and estimating the damages or benefits, where land is proposed to be *taken* for streets or other public uses, are entirely distinct from those for estimating the damages and benefits, and for making and collecting assessments, to *improve* the streets or other highways *after* they have been laid out and established.

2. Where land is taken for the purpose of widening the navigable channel of a river in said city, the owner cannot claim as damages the cost of dredging or removing the soil thereof so as to give his remaining land the same water front and access to the river as before; it being the purpose of such taking that such dredging and removal shall be done by the city, and the owner being liable to an assessment for the cost thereof, to an amount not greater than the benefit to him of such improvement.

3. Statutes which allow the benefits resulting to a land-owner from the construction of highways across his land to be offset against the value of the land taken to make such improvements, and the injury done to his adjoining lands, and provide that if the benefits exceed the damages, the balance shall be assessed upon his land — are valid as an exercise of the taxing power.

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiff owned " lot 1, in the partition of lot 1," in a certain section of land included within the limits of the city of Milwaukee. The southern boundary of the lot is the middle

line, or the thread, of the south branch of the Menomonee river.  For the purpose of constructing canals in the Menomonee valley, under chap. 91, P. & L. Laws of 1869, the defendant city ordered said south branch of the Menomonee river, opposite plaintiff's said lot (and elsewhere) to be widened, and took for that purpose a strip across the southern end of the lot. The board of public works assessed the damages to plaintiff from said taking at $1,665, and the benefit to him at $750, and the difference payable to him at $915.  From this assessment plaintiff appealed to the circuit court.

On the trial, the plaintiff, after proving title to the land, and introducing in evidence a map thereof, and of the river and the proposed canal, also called witnesses who testified  that said lot 1 is about 700 feet long, from north to south, and about 277 feet wide, from east to west, and that the appellant owned and occupied another piece of land of equal breadth, north of said lot 1, and extending to the north channel of the Menomonee river; that a canal 100 feet wide had been cut by him and other owners along the west side of his said land, which had been docked by him, and was navigable the whole length from the north channel to the south channel of said river; that the piece of land proposed to be taken extended across the south end of said lot 1; that the southern portion of it was covered by the water of the Menomonee river, which is navigable, and is about eighty feet wide in that vicinity, with a general course easterly and westerly as laid down on said map ; that the said strip of land extended to the thread of the said river; that the land proposed to be taken, as aforesaid, by the city, so far as the same was not covered by the river, was a strip running east and west along the north bank of said river, from sixty to seventy-seven feet wide, about two hundred and eighty feet long in the oblique line, and two hundred and forty-one feet in a line directly east and west, of which the west fifty feet was covered by the canal made by the appellant; that the value of the piece of land so taken was $50 or $60 a foot,

measured from north to south on the said canal, being sixty feet or more, that the chief value of the said lot 1 in the partition of lot 1, which was part of the Menomonee marsh, so called, and in the valley of that river, is derived from its accessibility to navigation; and that in order to be used, the land in that vicinity needs to be filled several feet above the natural surface so as to lie above the water, and to have docks constructed along the water line; that such filling and docking had been done on the said land of the appellant, except that no dock had been constructed upon the said strip proposed to be taken by the city; that the whole was particularly valuable for all purposes for which ground with dock fronts is required.

The plaintiff then offered to prove that upon the taking of the said strip by the city as proposed, he would be deprived of the south front on the south channel of the Menomonee river; that in order to have access to the said river, and to have the front thereon, it would be necessary to dredge out or excavate the earth on the strip of land so proposed to be taken; that such excavation would be necessary in order to make the canal proposed by the city to be made, and to make which the land of the appellant was proposed to be taken, as aforesaid; and that such excavation would have to be done at the cost of the appellant, as the owner in fee of said lot. The evidence was rejected as immaterial. Plaintiff also attempted to show, by the testimony of a civil engineer, the amount of excavation which would be required in order to make the river navigable over the land taken; but this evidence was likewise rejected. As a witness in his own behalf, plaintiff then testified that his remaining land would, by reason of the taking of the strip in question, be reduced in value, he supposed, "somewhere from $1,500 to $2,000." On cross examination he testified that said damage consisted wholly in "the cost of excavating from six to eight thousand cubic yards of earth, which he would be compelled to remove from the strip taken by the city, and which he would not have been compelled to remove if the line

of the river had not been changed." Thereupon, on motion of defendant's counsel, the testimony was excluded. The following question, put to said witness, was also overruled : "Suppose that this piece of land taken by the city should never be excavated at all : would the remainder of your land be worth as much as it now is ? "

The city then introduced witnesses who testified to the value of the plaintiff's land taken, putting a lower valuation upon it than plaintiff's witnesses. Upon their cross examination, "it appeared that they were owners of land in said valley, which would be benefited by the proposed alteration in the channel of the river, and as such were liable to pay the expense thereof ; that they had, a short time before the making of the award by the board of public works, made an appraisement of the value of the land in question, and had communicated the same to said board; that they were interested in and anxious for the success of the proposed alteration; and their present estimates were the same as those previously given by them to the board."

A witness called by the plaintiff gave evidence tending to show that said land was about fifty feet in width. The jury were then taken to view the premises.

The court, in its instructions to the jury, stated that the plaintiff's lot was "190 feet in width from east to west, and about 600 feet long from north to south ; " that the strip proposed to be taken therefrom by the city was "about 50 feet wide or deep, and about 190 feet in length, being about one-fifth of an acre of land by actual measurement. " It further charged them : "This improvement, when completed, will be a public highway, free to all who travel by water, and vastly increasing the commercial facilities of the city of Milwaukee. In this respect, its benefits are general, because common to all. But the owners of this property abutting upon this improvement are specifically benefited in the facilities it will afford them for constructing wharves and docks for receiving and shipping all

the various articles, the handling of which constitutes the commerce of the city. This right belongs exclusively to the owners of the lots abutting upon this improvement, and it is not a right or benefit enjoyed in common with the public. Whatever amount you may attach to this exclusive right as appertaining to this lot of the plaintiff's must be considered by you as a separate assessment for benefits to the plaintiff's lot in consequence of this improvement, to be deducted from the value in the gross of the lot. * * * It will be your duty, first, to ascertain from all the evidence in the case — that is, the evidence of personal observation and the statements of the witnesses — what the value of this piece of land in controversy was on the 29th of November, 1869, without reference to this improvement, as though it had never been contemplated — *that is, as it was on that day, without docking and filling it, with the stream in its natural condition and no improvement in the channel known or thought of.* And when you have done this, then assess the specific benefits, if any, which this improvement will confer upon this lot, as a charge against this lot, and the difference, if any, will be the amount of the verdict which you should render. "

The verdict assessed the damages to plaintiff's lot at $2,226.56, the benefits at $897, and the difference payable by the defendant city to plaintiff, at $1,229.56. Subsequently the court directed judgment for the amount last named, and for costs, to be entered in plaintiff's favor; but also directed that he have no execution therefor until the further order of the court. From this order and judgment the plaintiff appealed.

*Smith & Stark*, for appellant, argued that until the land taken by the city should be excavated so as to allow the river to flow over it in a navigable channel, plaintiff was cut off from access to navigation on the south side of his land by this intervening strip, and was thus deprived of an important use and benefit which he formerly had from the land (17 Wis., 586 ; 2 id., 308 ; 4 id., 386 ; 18 id., 118 ; 26 Wend., 404 ; 42 N. Y., 388);

that this benefit of which he was thus deprived had a money value, to which he was entitled, in addition to the value of the piece taken; that when this latter piece should be dredged and excavated, the expense of such dredging and excavation would be charged upon the remainder of plaintiff's lot, upon the theory that the lot was benefited by such excavation — benefited by the water front thus créated for it; that thus, under the ruling of the circuit court, no damages would be allowed plaintiff for *taking away* his water front, while the heavy expense of *restoring* such front would be charged upon the remainder of the lot, *because of the advantage restored;* that as a matter of fact the city authorities had assessed such benefit at $7,000; that the rule of damages in such a case, is clear (P. & L. Laws of 1869, chap. 91, sec. 4; charter of Milwaukee (1852), chap. VI., sec. 11; *M. & M. R. R. Co. v. Eble,* 4 Chand., 72; *Robbins v. R. R. Co.,* 6 Wis., 636); and that it was error, therefore, for the court to exclude the evidence offered on that subject. 2. They further argued that the expense of excavating the land taken in front of the plaintiff's lot was the limit of the assessment that would be made against him for doing the work, although the benefit to his land might be greater (P. & L. Laws of 1869, chap. 91, sec. 5, and chap. 401, secs. 23, 25, 28; city charter, chap. VII., secs. 5, 7); that by the statutes just cited, the city authorities could order the plaintiff to make such excavation, and it was their duty to so order within a reasonable time; that as a matter of fact such an order had been made and complied with before the cause was argued here; and that it was error to exclude the evidence offered of the expense of such necessary excavation. To the question of the proper measure of damages, counsel further cited *Hegar v. Railway Co.,* 26 Wis., 624; and *Thompson v. Railway Co.,* 27 id., 93. 3. Counsel further argued that there were several errors in the instructions: (1) In deciding questions of fact as to the dimensions of the land taken. (2.) In directing the jury to deduct from the damages the amount of special benefits to plaintiff's land, when there was

*no evidence* before them as to such benefits. The fact that the jury had *viewed* the premises did not dispense with the necessity for such evidence, the object of the statute (R. S., chap. 118, sec. 32) is not to make the jurors' observation take the place of exami·nation and cross examination of witnesses in court, but to enable them to understand the meaning and application of the proofs. *Close v. Samm,* 27 Iowa, 503, 507. (3.) In stating to the jury that the fact that the witnesses for the city were tax-payers did no more affect their testimony than it did the jurors in trying the case. The credibility of the witnesses was for the jury and not for the court to decide. (4). In requiring the jury to determine the value of the land as it stood on the 29th of November, 1869 ; in declaring that the land on that day was without filling, whereas the evidence showed that it had then been filled ; and in directing the jury to ignore every possibility of improvement in the channel of the river other than that which the city had undertaken to make. 4. Counsel contended that the judgment was erroneous : (1.) Because not entered for the amount of damages awarded by the jury, but only for the difference be-tween that amount and the amount of benefits awarded against him. (2.) Because the collection of any sum was indefinitely suspended, and the judgment thus rendered of no value. *Thompson v. Railway Co.,* 27 Wis., 93.

*E. G. Ryan,* City Attorney, for the respondent, examined the several statutes cited in the opinion, *infra,* and argued that, both in regard to streets, etc., on the one hand, and to canals, docks, etc., on the other, the legislature had provided for two separate and distinct assessments of separate and distinct damages and benefits; the one upon the mere taking, and the other upon the actual use; and that it was not only competent for the legislature, but reasonable and right in itself, to do so. The city orders a street, and the assessment of the land taken for it is made. But the street may not be opened for years, or may never be opened. Therefore, the first assessment is for the mere value of the land and the consequent damages or benefits :

and not for the grading or structure and their consequent damages or benefits, which may never take place. When they do take place, there is a separate assessment for them. And the owner, who in the meantime has the possession as well as the fee, has no right, constitutional or other, to complain. So when a canal is ordered, there is an assessment of the damages and benefits for the land proposed to be taken for it. There is in that assessment no question of the damages or benefits arising from the construction of the canal. That may never happen. When it does happen, an assessment must take place of the consequent benefits and damages. The appellant sought to introduce evidence of the cost of dredging his land, which he might never be called upon to do, which (under section 24 of the act relating to the board of public works) might be in whole or in part a public charge, in assessing the benefits and damages of the appropriation of his land for the canal. The court below gave the proper construction to the statute in excluding it. 2. Counsel further argued that the instructions fairly submitted the questions of fact to the jury upon this construction of the statutes.

DIXON, C. J.    The questions presented in this case depend wholly upon the proper construction and effect of certain provisions in the charter of the city of Milwaukee, regulating the manner of estimating the damages of the owner, and appraising the value of land taken in the laying out and opening of streets, and also the manner of making assessments to defray the cost and expense of grading, graveling, planking or paving streets in that city; which provisions in the charter have been adopted and made applicable to the work of laying out, establishing and constructing a system of canals, water channels or slips in the valley of the Menomonee river, in the city of Milwaukee, as provided for by chapter 91, private and local laws of 1869, and the amendments thereto, found in chapter 401 of the same laws, entitled "an act establishing a board

of public works in the city of Milwaukee," approved March 10, 1869. The sections of the latter act to which reference is more particularly made, are 21 to 25, inclusive, and section 28. Section 2 of chapter 91 declares the canals, water channels and slips, fixed, laid out and established in pursuance of that act, to be public highways, and subject to the laws and regulations applicable thereto in the city of Milwaukee. Section 4 enacts, that when it is necessary to take land for the purposes of the act, the common council, in taking the same, shall proceed in the same manner as provided by the charter of the city for the laying out and widening of streets in said city, except that the application of the commissioners shall take the place of the petition of freeholders. Section 5 provides, that whenever the commissioners shall order the construction of any portion of the canals, water channels or slips, or docking or dredging of the river, as provided by the act, they shall proceed as provided by law for the street commissioners in grading and graveling streets, with the same right of assessing benefits and damages on the adjoining property.

The provisions of the charter regulating the manner of appraising value and estimating damages where land is taken for streets, which appraisement and estimate is made by a jury of twelve men, are contained in sections 11 and 12 of chapter VI. of the charter (being subchapter VI. of chapter 56, Laws of 1852), and read as follows:

"Sec. 11. The said jurors, within the time limited, shall view and examine the premises proposed to be taken, and all such other premises as will, in their judgment, be injured or benefited thereby. After hearing such testimony as may be offered by any party interested, and which shall be reduced to writing by one of said jurors, they shall proceed to make their assessment, and determine and appraise, to the owner or owners, the value of the real estate so proposed to be taken, and the injury arising to them respectively, in consequence of the taking thereof, which shall be awarded to such owners respectively

as damages, after making due allowance therefrom for any benefit which such owners may respectively derive from such improvement. * * *

"Sec. 12. If the damage to any person be greater than the benefits received, or if the benefit be greater than the damages, in either case the jurors shall strike a balance, and carry the difference forward to a column, so that the assessment will show what amount is to be received or paid by such owner or owners respectively, and the difference only shall, in any case, be collectible of them, or payable to them. "

Section 18 of the same chapter declares, that the damages assessed shall be paid, or tendered, or deposited, as therein required, within six months from the confirmation of the assessment and the report of the jury ; and if they are not so paid, tendered or deposited, all the proceedings in any such case shall be void.

The provisions of the charter declaring how the expense of the grading, graveling, etc., of streets shall be paid, are found in section 5 of chapter VII., and are in these words : " The cost and expense of opening, grading, graveling, planking or paving streets and alleys to the centre thereof, shall be chargeable to and payable by the lots fronting on such street or alley. " The charter contains some further provisions pertaining to particular cases, not required to be noticed here. Sec. 21 of the act establishing a board of public works, chapter 401, private and local laws of 1869, above referred to, reads as follows : " The grading, graveling, planking, macadamizing or paving to the centre of any street or alley, and the grading, graveling, planking or paving of any sidewalks, and the paving of any gutter, shall be chargeable to or payable by the lots fronting or abutting upon such street, alley, sidewalk or gutter, not exceeding the amount to which such grading, graveling, macadamizing, planking or paving shall be adjudged by said board to benefit such lots. " Section 24 provides how the damages and benefits shall be estimated and determined.

The foregoing are all the provisions in the charter or elsewhere, necessary to be considered ; and, as argued by counsel for the city, they show very clearly that the proceedings for determining the value and estimating the damages or benefits when land is proposed to be taken for streets or other public uses, and the proceeding for estimating the damages and benefits, and for making assessments and collections to improve the streets or other highways when once laid out and established, are entirely distinct and separate. The process of laying out streets is distinct and complete in itself, and so is the process of providing for their improvement.

This appeal originated in a proceeding for the taking of a portion of the plaintiff's land for the purpose of widening the navigable channel of the Menomonee river, and is of the same kind as where land is taken, or proposed to be, for the purpose of a street. The plaintiff took his appeal from the original assessment of damages and benefits, to the circuit court, and the question which arose in that court, and is to be decided by this, is, whether, on such assessment, the plaintiff is entitled to have taken into consideration, as a proper element of damages in his favor, the costs and expenses to which he will be subjected in dredging and removing the soil of that part of the land taken, so as to actually widen the navigable channel of the river as contemplated by the board of public works, and give to his remaining land the same water front and access to the river which now exists. It is urged that by taking the strip of land nearest the river, the plaintiff is deprived of his water front and access to the river, which is necessarily a great injury, and that when damages and benefits come to be assessed for dredging and widening, the pretext will be to charge him with large benefits for restoring such water front or access. The claim is, that he gets nothing for having his land separated or cut off from navigable water, for which it now is, or heretofore has been, chiefly valuable; and that when such advantage comes to be restored, by the dredging and widening, he will

be largely, if not wholly, charged with the cost and expense, under the guise of benefits received. This, it is said, will be a clear loss, and to avoid it, or remedy the supposed wrong, the proposition is to have the cost and expense of dredging and widening, as nearly as the same can be now ascertained, allowed to him as damages in this proceeding to acquire title to the land.

If the board of public works proposed to take the land for any other purpose than for widening the river and enlarging its capacity for navigation, as, for example, for a common road or street along the bank of the river, which would permanently deprive the plaintiff of access to its navigable waters, and the profitable use of his remaining land as he now uses or may use the land taken bordering on the river, then, undoubtedly, such deprivation would constitute a most important item of damage to be estimated in the plaintiff's favor. But as the proposed public use here, and character of the improvement, are of an entirely different kind, and one which does not contemplate a destruction of the plaintiff's water front, but a mere change in the line or location of it, and which is not intended to deprive him or his remaining land of any of the benefits of full and free access to navigable water, as such access now exists, it is not easy to see how this temporary separation of his remaining land from navigable water, which must necessarily take place in the process of laying out and preparing for the improvement, should constitute any element of injury, or circumstance to be considered in estimating the damages sustained by reason of the taking and appropriation. In such case, the only legitimate and proper subjects of consideration, according to the rules prescribed by the charter and by law, would seem to be those submitted by the court to the jury on the trial below. The plaintiff owned the land upon one side of the river, of certain navigable capacity, but less, it is believed, than the exigencies of trade and commerce demand at that place. It is proposed by the board of public works, acting under authority of law, to

enlarge the river or widen the navigable channel so as to meet the requirements of the public. To make this improvement, and increase the capacity and facilities for navigation to the extent proposed, it becomes necessary to take a portion of the plaintiff's land. In determining the compensation to be made for the land (for it cannot be taken without compensation), the jury are first to ascertain and fix its value, and allow the same, and then to estimate or assess the benefits or damages, if any, to the remaining land or property of the plaintiff, which will result from the improvement when made. It may be that increasing the navigable capacity of the river as proposed will very greatly enhance the value of the adjoining property still owned by the plaintiff, or the part of his land not taken. If the jury find benefits thus received, they are to be deducted from the value of the land taken, and a balance struck; but if, on the contrary, they find damages, these are to be added to the value. If the jury find benefits in excess of the value of the land taken, the owner becomes debtor to the public for such excess, and must pay the same. Such is the system which has been provided by law for making compensation for lands taken for public use as streets and highways in the city of Milwaukee. As lands cannot be so taken and appropriated without compensation made to the owners, the assessments for benefits received are no more than a mode or species of taxation to provide or secure funds with which to make such compensation. The principle of such taxation is, that the owners whose property is specially or peculiarly benefited by the laying out or opening of streets or highways, should contribute the expense, or be taxed to make the requisite compensation; and as the party whose land is taken is equally within reach and operation of the principle with other owners, it may frequently happen that he may be without any direct pecuniary compensation at all, and sometimes he may even be required to contribute in money beyond the value of his land taken. The appraisement of value and assessment of damages and ben-

efits is doing that by one process or proceeding which other-
wise might have constituted two: first, an appraisement of
value and estimate of damages to the owner whose land is
taken; and then an assessment of benefits as a means of pay-
ing the value and damages; which latter would be a mere tax,
and of course might fall on the owner whose land was taken, in
an amount equal to or in excess of the value and damages to
which he might be entitled. It would be and is a tax levied
on the same principle as the taxes or assessments for the grad-
ing, graveling or other improvements of streets, as provided by
the charter and the amendment contained in the act establish-
ing the board of public works. This mode of taxation or
special assessment for the grading and improving of streets has
received the sanction of this court, and been held, both here
and elsewhere, unanimously we believe, not to be subject to
any valid constitutional objection.

The principles underlying taxation of this kind — the propo-
sition that it is taxation, or an exercise of the taxing power,
where benefits are deducted, allowed or charged in proceedings
like the present, and the conclusion that there exists no valid
legal or constitutional objection, are most fully and ably ex-
amined and sustained in the opinion of the supreme court of
Connecticut, by HINMAN, J., in *Nichols v. Bridgeport*, 23 Conn.,
189. The charter of the city of Bridgeport contained a similar
provision, where land was taken for the purposes of streets, or
highways; and the question arose upon its validity with re
spect to the constitutional provision that the property of no
person shall be taken for public use without just compensation
therefor. Two propositions were discussed and decided by the
court: first, whether the compensation could be paid by ben-
efits, or the benefits offset to the value of the land taken, so
that the owner would receive no money consideration or other
payment; and second, whether he could be charged for ben-
efits over and above the value of the land taken, and taxed or
required by law to pay for the same. Both propositions were

held in the affirmative. In that case the land was not only taken without compensation, except in the benefit received by the owner, but he was assessed and compelled, in addition, to pay the sum of six hundred dollars, as for a benefit he had received by the opening and extension of the street. Speaking of the first proposition, the court says: "It is obvious, that in point of fact the plaintiff's land might be so situated as to be greatly benefited by the opening of the new street through it; and while it is true that there is no power, and ought to be none, in the government, to thrust a benefit on an individual, and then compel him to pay for it, as a mere abstract proposition, yet we think it would be a perversion of the constitutional provision in respect to compensation for property taken for public use, to hold that the government must, in all cases, pay for the property taken irrespective of the local and peculiar benefit which the party receives thereby. While it is unjust that property should be taken for public use without compensation, it is equally so that an individual should be paid for a benefit he has received by a public improvement, whether it is thrust upon him or not. Public improvements are not made at the call of any single individual, nor are they denied because one or more individuals, whatever may be their interest in regard to them, may feel aggrieved by them; but they are made because the public require and need them; and when so required, individuals who are very much benefited by them ought surely to rest satisfied with them, without tenaciously insisting upon compensation for these benefits."

And again, in the discussion of the second proposition, as to the right to charge and compel payment by the owner as for benefits received beyond the value of his land taken, the following language occurs: "It is said that it takes the property of individuals, that is, their money, for public use, without any compensation therefor. This is not so, either in theory or in fact. If the assessment has been truly and justly made, the fact must be regularly ascertained to be, what the theory of the

proceeding supposes it to be, viz., that the party whose money is taken, is locally and peculiarly benefited, over and beyond the ordinary benefit which, as one of the community, he receives in all public improvements, to the precise extent of the assessment. It is no answer to this to say that the power may be abused; that is true of every power; and whether this particular power is so liable to be abused as to make it improper that it should be vested in the city corporations, is a matter of which the legislature must be the sole judge. * * * From the very nature of the subject, the power of taxation is an arbitrary power, which, when exercised by the government itself, is only limited by the discretion of the legislature, and when exercised by subordinate bodies, is limited to the objects for which the legislature has seen fit to authorize it to be exercised, and by such restrictions as the legislature has seen fit to prescribe; unless, indeed, it is further limited by some constitutional provision." The opinion then proceeds to contrast the merits of this system of special assessments for the opening and improvement of streets and highways, with other systems or modes of taxation for the same purposes, and to show that it is as equitable as any, and concludes as follows: "But, as the constitution is imperative, that private property cannot be taken without just compensation being made therefor, it follows, that the estimated benefits must be considered and treated as the compensation for the land taken, and the only compensation to which the party is entitled. This, however, is, in effect, but one way of taxing an individual, peculiarly benefited by the laying out of a highway, for a portion, and it may be only a portion, of his just share of the whole tax, for the public improvement. If you can, in this way, tax one individual for the whole or a part of his share of the public burden, it seems to follow that you can, for the same reason and on the same ground, viz., the special or peculiar benefit he has received, or is to receive, by the improvement, tax every other individual who is similarly situated. And if you can tax him to the extent of

the full value of the land actually taken, there is no reason that will limit the tax to that precise amount, or to any amount, short of the full value of the benefit he receives, provided all others similarly situated are taxed proportionably."

These quotations, liberally made, clearly show the nature of these special assessments or charges and deductions for benefits received, and correctly state the principles upon which they are sustained. And to the same effect, see *Washington Avenue*, 69 Pa. St., 358 to 361.

Now, where the statutes provide, as in this case, distinct proceedings for laying out streets and acquiring the right of way, and for separate assessments for benefits to make compensation, and then again, other distinct process or proceedings and assessment of benefits in order to improve the streets when laid out, it would seem to be an entire departure from and overthrow of the system, to hold that the assessment made or to be made against the owner in the latter proceeding as for a benefit, might be taken into account and credited or allowed in his favor as a damage in the former. The assessment in the latter as for benefits beyond any damages sustained, is a tax or public burden lawfully imposed on the individual. It is so in theory as well as in fact in both proceedings. It is difficult to perceive how a party can suffer that as a damage which is lawfully imposed upon him or his property as a tax or public burden, in the sense that he may recover it back from or have it allowed to him by the public in the same or any other proceeding. The benefits charged, or to be charged, to the plaintiff for dredging and actually widening the river, or so as to cause the same to be done, are but a tax. They are, therefore, in legal contemplation, no damage. If, instead of special assessments for benefits, in order to widen and improve the navigation of the river, the system was a general tax upon the city or all the property in it, the plaintiff would of course have no such cause of damage or injury as is now complained of, unless, indeed, it should be that his proportion of the general tax, as near as

Holton vs. The City of Milwaukee.

might be, should be allowed and credited to him as an item of damage, which would hardly be seriously proposed. The claim now made has no better foundation in law than such a claim would have. It differs in amount, but not in kind. It is of the very same nature, and cannot be sustained. Let us suppose, for example, instead of the present proceeding, it had been one to take other land of the plaintiff for the purpose of a street, which street, it was known, was soon to be graded, graveled, planked or paved at a very considerable expense, all or the most of which would, under the system of taxation or assessment adopted, fall upon the plaintiff as the owner of the property fronting or abutting on the street; could the plaintiff, in such case, have had the expense, so to be incurred, allowed in his favor as damages? Could he take out of the public treasury as damages, in one proceeding or with one hand, what he would be obliged to put in as a tax in the other proceeding or with the other hand, and so escape taxation entirely? We think, for the reasons above given, he could not, and consequently that there was no error in the proceedings or trial which resulted in the verdict and judgment in this case.

The direction of the circuit court, that no execution issue upon the judgment rendered in favor of the plaintiff until the further order of the court, is of doubtful propriety. We do not say that the court had no power to make the order under the circumstances, nor do we direct the order to be vacated. It may be safely left to that court to vacate the order, which will undoubtedly be done, on application of the plaintiff, unless the amount of the judgment for damages and costs, with interest, is sooner paid to the plaintiff by the city.

*By the Court.*— Judgment affirmed.

A motion for a rehearing was denied at the January term, 1872.