State ex rel. Schintgen vs. Mayor and Common Council of La Crosse.

THE STATE EX REL. SCHINTGEN, Respondent, vs. THE MAYOR AND COMMON COUNCIL OF THE CITY OF LA CROSSE and others, Appellants.

*October 14 — November 22, 1898.*

*Appeal: Parties: Municipal corporations: Special assessments: Certiorari: Estoppel.*

1. Although the charter of the city of La Crosse (Laws of 1887, ch. 162, subch. V, sec. 24) requires contractors for municipal improvements to look wholly to the special assessments made therefor for their compensation, and the city is not liable to pay for the work, yet, the city and its officers being the moving parties in a proceeding for laying a sewer, it is their duty to maintain the integrity and validity of assessments to pay for such sewer if possible, and to take every step necessary to that end. They are therefore adverse parties, who may appeal from a judgment annulling and vacating such assessments. *McCarty v. Ashland Co.* 61 Wis. 1, and *State ex rel. Kempster v. Common Council,* 90 Wis. 487, distinguished.

2. On *certiorari* to review proceedings by city officers for the construction of sewers, which had resulted in the levying of a special assessment upon property of the relator, even though the requirements of the city charter were not in all respects complied with, the court will decline to interfere if it does not appear that any injustice has been done to the relator.

3. A property owner in a city who, knowing that a sewer is being constructed by the city which will greatly benefit his property, yet keeps silent and waits until the sewer is entirely completed before bringing an action to set aside the assessment therefor because of defects in the proceedings, is equitably estopped from obtaining that relief to the injury of other parties interested.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

The case sufficiently appears in the opinion.

*Martin Bergh,* city attorney, and *Ray S. Reid,* of counsel, for the appellants, argued, among other things, that the relator not showing that he has been injured by any defect in the proceedings, the assessment would not be set aside on *certiorari* at his instance. *State ex rel. Smith v. Cooper,* 59 Wis. 666; *State ex rel. Manitowoc v. County Clerk of Manitowoc Co.* 59 id. 15; *Rutland v. Comm'rs of Worcester Co.* 20 Pick. 79, 80. By delay in suing out his writ the relator must be deemed to have waived any such defects. *Kimball v. Homan,* 74 Mich. 699; *Rentz v. Detroit,* 48 id. 544; *State v. Essex Public Road Board,* 37 N. J. Law, 335; *State ex rel. Dalrymple v. Milwaukee Co.* 58 Wis. 12.

For the respondent there was a brief by *McConnell & Schweizer* and *Higbee & Bunge,* and oral argument by *E. C. Higbee* and *C. H. Schweizer.* They argued that the appellants were not the real parties in interest and could not appeal. *McGregor v. Pearson,* 51 Wis. 122; *Herndon v. Bock,* 97 id. 548; *McCarty v. Ashland Co.* 61 id. 1; *State ex rel. Kempster v. Common Council,* 90 id. 487. The judgment for costs against the city, being for less than $100, did not give it the right to appeal without the certificate of the judge. The validity of the acts of the board of public works depends upon their complying strictly, step by step, with the provisions of the charter. *Kneeland v. Milwaukee,* 18 Wis. 417; *Gilman v. Milwaukee,* 61 id. 588; *Dieckmann v. Sheboygan Co.* 89 id. 570.

WINSLOW, J. This was an action of *certiorari* brought by the relator against the mayor and common council, board of public works, city clerk, and treasurer of the city of La Crosse, for the purpose of annulling and setting aside certain proceedings for the laying of sewers upon certain streets in the

city of La Crosse, which had resulted in the levying of special assessments against certain lots owned by the relator, amounting to nearly $300. Upon the return the circuit court held that the special assessment was void, and set the proceedings aside, and from this judgment the city officers have appealed.

A preliminary objection is made by the respondent to the right of the appellants to take an appeal, on the ground that they are not interested, either personally or officially, in the result of the litigation, and are not aggrieved by the judgment. In support of this contention, it is urged that, by the provisions of the charter of the city of La Crosse (Laws of 1887, ch. 162, subch. V, sec. 24), the only person interested in the question of the validity of the special assessments is the contractor who built the sewer, because the city is under no liability to pay for the sewer, even though the certificates be held void. The charter provides substantially as did the charter of the city of Milwaukee, in *Zwietusch v. Milwaukee,* 55 Wis. 369, that the city shall never, in any event, be liable to any one on account of such work, but that the contractor must look to the assessments alone for his pay. So it is said neither the city nor its officers are aggrieved by the judgment; the contractor is the only person aggrieved, and he only can appeal. *McGregor v. Pearson,* 51 Wis. 122. In connection with this contention, reliance is placed upon the principles laid down in *McCarty v. Ashland Co.* 61 Wis. 1, and *State ex rel. Kempster v. Common Council of Milwaukee,* 90 Wis. 487. These latter cases were cases of removal from office by a county or city board upon charges of misconduct. In both cases the board was acting in a judicial character, and practically as a court, and it was well said in the first of those cases that the board of supervisors had no more right to appeal from a judgment reversing its order on *certiorari* than a justice of the peace would have to appeal when one of his judgments is reversed on *certiorari.* This seems plain, but it does not seem in any degree applicable to the present

case.  Here the city council is upon one side, acting presumably in the interest and for the benefit of the city of La Crosse, pushing through certain improvements which entail a charge upon the relator's property.  The council is not acting simply as the arbiter between two citizens, as in the removal cases, but it is the moving party itself, and the owners of lots are the opposing parties.  Now, although the contractor may, by the provisions of the charter, assume the risk of collection of the special assessments, still there is a manifest duty resting upon the corporate officers to maintain the integrity and validity of the assessments if possible, and take every step necessary and proper to that end.  In this view, the city officials remain throughout the entire proceeding an adversary party, interested in their official capacity in the enforcement of the assessments, and so must necessarily have the right to appeal from a judgment which vacates the entire proceeding.

Chapter VIII of the charter of the city of La Crosse, which governs the construction of sewers, provides, in substance, that the council shall divide the city into sewerage districts; that the board of public works shall make a general diagram of contemplated sewerage for each district, and shall give notice of the completion of such diagram in the official paper, and that it is open to objection and suggestion of all property owners in the district for ten days, after which time it shall be presented to the council for approval, and shall take effect when mutually approved by both council and board; that on or before March 1st in each year the board of public works shall report to the council the sewers necessary to be built in each district during the current year, in accordance with the general plan previously adopted, and the council may then reject, alter, or approve the recommendations, as it sees fit, and the board shall carry out the work as finally directed by the council.  It is also provided that the board of public works may at any time during the year recom-

mend to the council the construction of other sewers than those named in the general report, and the council may act thereon, and order the same built, *provided* that five days' previous notice of the presentation of such recommendation shall have been given by publication in the official paper of the city. The charter contains the usual provisions as to the letting of contracts to the lowest bidder and the levying of special assessments to pay for the same.

It appears by the return that the only sewerage district ever established by the council was in 1884, when the whole territory south of the La Crosse river was constituted a sewerage district. No diagram of this district appears ever to have been made by the board of public works or council; no recommendation was made by the board of public works on the 1st of March or during the year that the sewers attacked in this action should be constructed; but they were constructed in pursuance of a petition presented to the council by property owners in August, 1895. This petition asked for the construction of sewers on Main street, from Tenth street east; also on Eleventh, Thirteenth, Fourteenth, and Fifteenth streets, between Main street and King street. Upon this petition, the council directed the board of public works to prepare estimates, plans, and specifications for a system of sewers on Main street from Tenth to Seventeenth, and on Eleventh, Thirteenth, Fourteenth, Fifteenth, Sixteenth, and Seventeenth from Main to King street. The board prepared such diagrams, plans, and specifications, and they were approved by the council, and on September 27th the council directed the board to insert the preliminary advertisement required by sec. 3, ch. VIII, of the city charter, which notice was in fact published six times, beginning September 30th and ending October 5th. On the 11th of October the plans and estimates were again approved by the council, and the board were directed to advertise for bids in accordance with the charter, which was done, and the job

finally awarded to one Fetter, and the contract made November 5, 1895. Fetter proceeded with the work, and it was fully completed prior to July 7, 1896, when certificates of special assessment were issued against the abutting property, including the plaintiff's lots, and the same were carried into the tax roll, and this writ was sued out February 27, 1897.

If it were necessary for the defendants to show that the provisions of the charter had been literally carried out, it would have to be said at once that they have failed to do so. But is such a showing necessary, in order to defeat the *certiorari* proceedings? We think not. The writ of *certiorari* is not one of absolute right, but one resting in the sound discretion of the court. It has long been the established law in this court that the writ will be dismissed when brought to review tax proceedings, if it appears that no equitable grounds exist for its issuance. *Knapp v. Heller*, 32 Wis. 467. In that case it was said that "it is quite analogous to a proceeding in equity to set aside a tax, where the court inquires whether any injustice has been done, and whether there is any equitable ground of interference. If there is not, the court will decline to interfere in the matter." And it was held that, though error appeared in the tax proceedings, yet, if the complaining party will pay no more taxes than in equity he ought to pay, the court should either quash the writ or dismiss the proceedings upon the merits, even after return.

Now, in the present case, it is true that a general diagram of the plan of sewerage for the whole sewerage district was never made as required by the charter, but a diagram and plan of the proposed sewers in a district included between Tenth and Seventeenth streets and Main and King streets was made, and notice of its making was given as by the charter required. If the council had previously declared this territory a sewerage district, the diagram and notice

would seem to have been entirely sufficient under the charter. It .is difficult to see how any substantial injury can be claimed to have been suffered by the relator by the omission to formally make the territory into a sewerage district. It would not be going very far to say that the acts of the council and board in this regard were substantially a compliance with the charter requirements and gave jurisdiction of the proceedings; but, whether this is so or not, it certainly does not appear, either by the averments of the. petition or by the facts set forth in the return, that the relator has suffered any injury by reason of the defects in the proceedings, or that he has paid one cent more than his property ought to be charged for the construction of the sewer. The tendency of legislation and of decision is more and more to require property owners who are contesting taxation, either general or special, to pay, as a primary condition of any relief, such part of the tax as is equitable and just, notwithstanding there may be serious irregularities in the original levy. *Wells v. Western P. & S. Co.* 96 Wis. 116; Stats. 1898, sec. 1210*a*.

In the present case another fact appears which seems entitled to great weight. The relator has waited until the work has been entirely completed before bringing his writ to set the proceedings aside. He has kept silence until the contractor has invested large sums of money and has constructed a work of lasting benefit to the relator's property, which cannot be removed, and then has demanded that the whole proceeding be set aside for errors in its very inception. He does not allege that he is a nonresident of the city, nor that he was ignorant in fact of the progress of the work or the pendency of the proceedings; so it must be assumed, we think, that he knew of these facts. There are many very respectable authorities that hold that a party seeking relief from special assessments for local improvements by *certiorari* cannot wait until others, not parties, would be injured by the

State ex rel. Schintgen vs. Mayor and Common Council of La Crosse.

granting of the relief, but he must apply for his writ at once, before the work has been done and contractors have been put in such a position that they cannot be indemnified. 2 Spelling, Extr. Relief, § 1959; *State v. Logan*, 43 N. J. Law, 421; *In re Lantis*, 9 Mich. 324; *Noyes v. Springfield*, 116 Mass. 87; *Trustee of Schools v. School Directors*, 88 Ill. 100. The principle is that of estoppel, though often termed laches. The principle is thus stated in *Galliher v. Cadwell*, 145 U. S. 368: "The cases proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that, by reason of the delay, the opposite party has had good reason to believe that the alleged rights are worthless or have been abandoned; and that, because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit the former to now assert them." *Penn Mut. L. Ins. Co. v. Austin*, 168 U. S. 685. The principle is salutary and just, and accords with every natural idea of right conduct. Consider the present case: The contract was let to build this sewer in November, 1895, and the contractors went on without objection from the relator, and built the sewer, undoubtedly expending large amounts of money in its construction, and fully completed it in July, 1896. They relied for their pay solely upon the special assessments against abutting property. If they cannot be enforced, then, under the terms of the charter, the contractor has no remedy. The sewer is a permanent benefit to the relator's property, and it would not be practicable to remove it. But the relator waited until months after it was complete, and then attempted to set the proceedings aside upon *certiorari*, in which proceeding judgment must be either of simple affirmance or reversal, without any provision for the payment of the amount equitably due. We think the doctrine of *Knapp v. Heller*, 32 Wis. 467, applies with great force to the present case. It is not apparent that any injustice has been done to the relator in any way.

The writ should not have issued, or, if issued, the proceedings should have been dismissed after return.

*By the Court.*— Judgment reversed, and action remanded with directions to dismiss the proceedings.