BANK OF ANTIGO, Appellant, vs. RYAN, Respondent.

*September 30 — December 15, 1899.*

*Chattel mortgages: Estoppel: Pleading.*

1. R., a mortgagor of chattels, having ample thereof in his possession to pay his debt, and refusing to part with his possession because it was pledged as security for that debt, turned the mortgaged property over to a purchaser, on being requested by the mortgagee so to do, because such purchaser had agreed to assume R.'s debt and give note and security therefor. *Held,* that to allow the mortgagee to thereafter disaffirm the act and claim such purchaser had not assumed the debt and therefore R. was still liable, would amount to a fraud on R., and hence the mortgagee was estopped to so claim.

2. A defense of estoppel, though not pleaded in express terms, is available, where all the facts essential to constitute an estoppel are pleaded.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

This is an action upon a promissory note for $1,500. The answer admits the execution and delivery of the note, and alleges that on or about the 1st day of September, 1897, the plaintiff, for value received, released this defendant from any further liability upon the note, and agreed to accept the liability of the Ingersol Land & Lumber Company therefor. Upon the trial the plaintiff introduced the note in evidence and rested. Thereupon the defendant introduced evidence which tended to show that in the summer of 1897 the defendant had a quantity of pine saw logs in his possession, amounting to about 657,000 feet; that he owed the plaintiff bank $1,500 upon the note in suit, and that the bank had a chattel mortgage upon the logs as security therefor; that about the 1st of September, 1897, one Bruce, acting as agent for the Ingersol Land & Lumber Company, met the defendant in Antigo, and proposed to buy the logs, and that they agreed upon the purchase price, but were not

able to complete the sale, because Bruce had no money to pay down, and *Ryan* stated that there could be no sale, because he owed the *Bank of Antigo* $1,500, for which they had a mortgage on the logs. Thereupon Bruce and *Ryan* went to the plaintiff bank for the purpose of endeavoring to arrange the matter so that *Ryan* should be released, the mortgage removed, and the liability of the Ingersol Land & Lumber Company accepted in place of *Ryan's.* The testimony of the defendant's witnesses further tends to show that *Ryan* was then and there released by the cashier of the plaintiff bank from all liability, and that the liability of the Ingersol Land & Lumber Company was accepted in his place, and consent was given by the bank that the logs might be removed from the county and manufactured by the Ingersol Company, but that the note and securities which were to be given by the Ingersol Company were not at that time executed. The logs were immediately taken possession of by the Ingersol Company, with *Ryan's* assistance, and were removed from the county and manufactured into lumber, but *Ryan's* note was never delivered up, nor were any papers executed by the Ingersol Company, which soon thereafter failed. On the part of the plaintiff, the evidence of the bank cashier tended to show that there was no actual, present release of *Ryan* agreed upon at the time of the transaction at the bank, but that it was understood that when the Ingersol Company returned a note and mortgage, such as was agreed upon, to the bank, then, and not till then, *Ryan's* note was to be released. The cashier admits, however, that he consented on the part of the bank to the removal of the logs by the Ingersol Company. The jury returned a verdict for the defendant, and from judgment thereon the plaintiff appeals.

For the appellant there were briefs by *Ryan, Hurley & Jones,* and oral argument by *M. A. Hurley.*

*T. W. Hogan,* for the respondent.

The following opinion was filed October 20, 1899:

WINSLOW, J.   A number of exceptions were taken to rul-
ing upon evidence and instructions, but the view which we
have taken of the evidence renders unnecessary any discus-
sion of them.   The entire testimony, construed most favor-
ably to the plaintiff, and with every controverted question
resolved in its favor, presents the following state of facts:
*Ryan*, the defendant, owned over 600,000 feet of pine logs,
upon which the plaintiff bank held a chattel mortgage to
secure the payment of *Ryan's* note (being the note in suit)
for $1,500.   About September 1, 1897, the Ingersol Land
& Lumber Company sent to *Ryan* an agent named Bruce
to purchase the logs, and Bruce and *Ryan* agreed on the
price, but the sale could not be completed, because Bruce
had no cash to pay, and hence *Ryan* could not pay off the
bank and obtain the release of the chattel mortgage.   There-
upon Bruce and *Ryan* went to the bank to see if the matter
could not be arranged without cash, and saw Bucknam, the
cashier of the bank, with whom it was finally arranged that
the Ingersol Company should give a note and mortgage and
insurance policies on the logs for the amount of *Ryan's* note,
and, when they gave them, *Ryan's* note and mortgage were
to be canceled.   Thereupon the bank gave the Ingersol Com-
pany permission to remove the logs; and *Ryan*, relying on
this consent, also consented to the removal, and superin-
tended the shipment.   The Ingersol Company removed the
entire lot of logs, and manufactured them into lumber.   A
few days later Bucknam sent the necessary papers for com-
pleting the transaction by mail to the Ingersol Company,
but, owing apparently to some disagreement as to the length
of credit, they were not signed; and in a short time the
Ingersol Company failed, and the papers were never exe-
cuted, nor has the bank been paid.   *Ryan's* note was never
surrendered.   The entire purchase price of the logs was

Bank of Antigo vs. Ryan.

$4,270, of which the Ingersol Company has paid *Ryan* $1,800, the greater part or all of which was paid into the plaintiff bank, and drawn out by *Ryan* by checks. The defendant claims that there was a complete novation here, but it may be doubtful whether, upon the plaintiff's evidence, as just stated, it can be held, as matter of law, that a novation took place. To constitute novation, there must be a substitution of one valid and enforceable contract for another. *Spycher v. Werner*, 74 Wis. 456. Whether there was such a new contract here, we find it unnecessary to decide, because the facts show that the plaintiff is estopped from now claiming any liability on the part of *Ryan*. *Ryan* owed the bank, and had in his possession ample property to pay the debt with. He refused to part with this property because it was pledged as security for that debt. The bank, in substance, requested him to turn it over to the Ingersol Company, because the Ingersol Company had agreed to assume *Ryan's* debt and give their own note and securities therefor. Acting upon this request or consent, *Ryan* turned over the lumber, and thus divested himself of an ample fund with which to pay his debt. The act of the bank clearly induced this change of position on the part of *Ryan*. To allow the bank now to disaffirm the act and claim that the Ingersol Company did not succeed in assuming the debt, and therefore that *Ryan* is still liable therefor, would amount to a fraud on *Ryan*, and hence would be a clear violation of the law of estoppel. Though the defense of estoppel was not pleaded in express terms, still all the facts essential to constitute the estoppel were alleged. The jury should have been directed to find a verdict in favor of the defendant.

*By the Court.*— Judgment affirmed.

A motion for a rehearing was denied December 15, 1899.