LAWTON, Appellant, vs. CITY OF RACINE and others, Respondents.

*January 7—January 26, 1909.*

*Municipal corporations: Public improvements: Preliminary proceedings: Irregularities: Estoppel: Necessity of pleading estoppel.*

1. The assessment for street improvements by the front-foot rule, resulting from proceedings commenced under sec. 925—175, Stats. (1898), authorizing a city to cause its streets to be paved upon a vote of two thirds of the members of the common council, the cost of such improvement to be assessed upon the property benefited, a petition purporting to comply with sec. 925—176 having been filed during the proceedings, if not a compliance with the statutes, constitutes an irregular exercise of power merely.

2. A lotowner challenging a completed street improvement must show not only that the power to make the improvement was

irregularly exercised, but that he is damaged thereby and without fault himself.

3. Where a lotowner, at the time he purchased, knew that his grantor had signed the petition for the paving of the street in front of his premises, and knew that the paving was being done and made no objection until after it was completed, the cost of the improvement being reasonable and the lotowner's premises being benefited to the extent of the assessment against them, he is estopped to maintain an action to enjoin the issuance of bonds to pay for such paving.

4. While estoppel, as a general rule, must be pleaded, if the facts showing the estoppel are within the issues made by the pleadings, and the evidence showing the estoppel is admissible for any purpose thereunder, it is not necessary that the estoppel should be specially pleaded.

APPEAL from a judgment of the municipal court of Racine county: WM. SMIEDING, JR., Judge.    *Affirmed.*

This action was brought against the defendant city of *Racine* and its officers to restrain the issue of bonds based upon a special assessment levied for the paving of Center street from Sixth street to De Koven avenue in said city.    In the spring of 1906 the common council took action to pave said street and the board of public works was directed by the council to view the street and make estimates as to cost, benefits, and damages which would accrue to each parcel of real estate and the total amount of benefits and damages and report to the common council.    The board of public works proceeded accordingly and reported to the council.    While this report was before the council and in September, 1906, a petition purporting to be signed by a majority of the owners of the real estate fronting on the street in question was presented to the common council, praying that the street be paved from curb to curb with brick on macadam foundation with sand filler instead of asphalt filler, as formerly ordered by the council.    The city, as appears from the record, thereafter proceeded to assess damages according to front-foot rule.    The common council by a two-thirds vote directed that the prayer of the petition be granted and the street

paved with brick on macadam foundation with concrete curb. Thereafter and in June, 1907, the board of public works advertised for bids for the paving of the street, reported the schedule of bids to the common council, and the contract was let for the doing of such work. The work was carried on under the supervision of the board of public works, and assessments made against the adjacent property by the front-foot rule for the paving of the street. A report of this assessment was completed, signed by the members of the board of public works, and filed with the city clerk on the 16th day of November, 1907. Thereupon the common council directed the city clerk to publish a notice, as required by sec. 925—191, Stats. (1898), of the issue of bonds to pay for the paving, which was done. Before the expiration of the thirty days fixed by this notice the appellant brought the present action to restrain the collection of the assessment against his property or the issue of bonds upon it, he being an owner of real estate abutting upon said street. A temporary injunction was granted restraining the defendants from further action. The court found as follows:

*First.* That one Albert N. Gifford was the owner of the premises described in the complaint at the time when the alleged petition in this matter was signed.

*Second.* That said Gifford signed such petition for paving in accordance with the requirements of sec. 925—165 of the subchapter in question some time in the month of October, 1906.

*Third.* That in November, 1906, the plaintiff purchased the premises described in the complaint from said Gifford.

*Fourth.* That at the time of said purchase the plaintiff knew that said Gifford had signed said petition and subsequently had knowledge of the proceedings to pave said street and that it was actually being paved.

*Fifth.* That the plaintiff took no steps nor commenced any

procedure objecting to said proceeding or said work until the said improvement was fully completed.

*Sixth.* That the paving in question was properly laid in accordance with the request contained in the petition.

*Seventh.* That the cost of such improvement was reasonable.

*Eighth.* That the defendant city paid a just and fair proportion of the expense of such paving.

*Ninth.* That the premises described in the complaint were actually benefited to the extent of $134.69, the amount assessed against said premises as special improvement taxes for the pavement in question.

As conclusions of law the court found:

(1) That the temporary injunction heretofore granted should be dissolved.

(2) That the plaintiff's complaint herein be and the same is hereby dismissed, and that the defendants have judgment for their costs and disbursements.

Judgment was entered in accordance with the findings, from which this appeal was taken.

For the appellant there were briefs by *Fish & Storms,* and oral argument by *I. A. Fish.*

*E. R. Burgess,* for the respondents.

Kerwin, J.   Counsel for appellant contends that the petition presented to the common council was not signed by a majority of the frontage and therefore the council was without jurisdiction to make any assessment.   The court below made no finding upon this question, and it is not very clear from the record whether the petition had a majority of the owners or not.   Counsel for appellant claims it had not and counsel for respondent that it had, the dispute arising mainly upon ratification and authority of signers who assumed to sign for others.   We shall not undertake to decide the question, as we do not regard it necessary to the determi-

nation of the case. The common council found that a majority had signed and so stated in a resolution passed. It appears from the record that in the spring of 1906 the common council proceeded to pave the street in question under the provisions of sec. 925—175, Stats. (1898), being part of the general charter in force in the city of *Racine.* This section in broad and general terms authorizes the city to cause streets to be paved upon a vote of two thirds of the members of the council where the expense exceeds $500, and further provides that the expense may be paid in whole or in part by the city or by the property to be benefited thereby, as the council shall direct, but in no case shall the amount assessed to any parcel of real estate exceed the benefit accruing thereto by such improvement. Sec. 925—176 provides for improvements of streets upon petition of more than one half of the frontage of the lots upon the part of the street proposed to be improved, and, further, that the cost of such improvement, when made, shall be assessed to the respective owners of the lots fronting upon such street in the ratio of each owner's number of feet front to the entire length of such improvement, exclusive of street crossings, which shall be chargeable to the city as its portion of expense. Sundry proceedings were had by the common council and board of public works regarding the paving of the street in question, resulting in assessing against the respective owners of lots fronting upon the street paved the amount of the assessment according to the front-foot rule.

It is insisted by appellant that the improvement was attempted under sec. 925—176, and that the proof shows that a majority of the owners did not sign, hence the council never got jurisdiction of the subject matter; therefore the assessment was void. The material question to be considered is whether there was a lack of power in the council or an irregular exercise of power. The want of power, as contended by appellant, is based upon lack of a petition signed

as required by sec. 925—176. But we think the city had power under sec. 925—175, and if it failed to follow the provisions of law it was an irregular exercise of power and not a want of power. We think the authorities upon which appellant relies under this head are mainly, if not wholly, cases where there was a lack of power or where it appeared that the tax or assessment was unjust or inequitable. In *Dietz v. Neenah,* 91 Wis. 422, 64 N. W. 299, 65 N. W. 500, the law under which the assessment was attempted to be sustained was unconstitutional and void. Hence there was no power. In *Jorgenson v. Superior,* 111 Wis. 561, 97 N. W. 565, the city attempted to change the grade of a street without making an assessment of damages, which it had no authority to do. In referring to the question of estoppel urged in the case the court said (111 Wis. 569, 87 N. W. 568):

"When the act done is without jurisdiction or authority, few if any cases recognize or enforce an estoppel. In this case the act of the city was wholly without authority."

Even this case seems to recognize the rule without limitation that one benefited cannot maintain an action to enjoin. The court said:

"So, also, in cases where the adjoining property is being benefited by an improvement of a permanent character, the owner may not sit in silence and accept benefits and then resist payment therefor because of error in the proceedings,"—citing *State ex rel. Schintgen v. La Crosse,* 101 Wis. 208, 77 N. W. 167.

*State ex rel. Moore v. Ashland,* 88 Wis. 599, 60 N. W. 1001, was a *certiorari* to review the proceeding; hence the rule in equitable actions did not apply. *Canfield v. Smith,* 34 Wis. 381, is where the common council could improve a street at the expense of the adjoining lots only upon petition signed by a certain percentage of the owners of the frontage on the street, and such petition was held essential to give the council jurisdiction, and that equity would grant relief

where the applicant had not estopped himself in any way from demanding such relief. So, too, in *Dieckmann v. Sheboygan Co.* 89 Wis. 570, 62 N. W. 410, the initial steps were never taken by presentation of a petition or the passage of a resolution, either of which was necessary to give the council jurisdiction of the subject matter. To the same effect is *Borgman v. Antigo,* 120 Wis. 296, 97 N. W. 936.

We therefore think the foregoing cases are distinguishable from the instant case because under the general charter the city had power without any antecedent steps—such as filing of a petition by lotowners—to pave streets, and that the acts complained of, if not in compliance with the charter, con-stitute an irregular exercise of power merely. Such being the case, it was incumbent upon the plaintiff to show, not only that the power was irregularly exercised, but that he was damaged thereby and without fault himself. *Beaser v. Barber A. P. Co.* 120 Wis. 599, 98 N. W. 525; *State ex rel. Schintgen v. La Crosse,* 101 Wis. 208, 77 N. W. 167; *State ex rel. Hallauer v. Gosnell,* 116 Wis. 606, 93 N. W. 542; *Day v. Pelican,* 94 Wis. 503, 69 N. W. 368; *Hixon v. Oneida Co.* 82 Wis. 515, 531, 52 N. W. 445; *Warden v. Fond du Lac Co.* 14 Wis. 618; *Miltimore v. Rock Co.* 15 Wis. 9; *Mills v. Gleason,* 11 Wis. 470; *Mills v. Charlton,* 29 Wis. 400; *Fifield v. Marinette Co.* 62 Wis. 532, 22 N. W. 705.

The doctrine which controls this case is clearly laid down in *Beaser v. Barber A. P. Co., supra.* The court, speaking through Justice DODGE, said (120 Wis. 601, 98 N. W. 525):

"The judicial policy of this state has now become thor-oughly settled that courts of equity will not lend their aid to shield from payment or from the burden of certificates of special assessments for public improvements when the munici-pality or other governmental representatives had general power to cause such improvements to be made at the expense of the private owner, and the amount assessed is not more than his proper share of the reasonable cost of such improve-ment; that if, from irregular exercise of that power, or other

cause, not affecting adversely the burden imposed on him, the imposition be illegal or invalid, he must find his remedy under the strict rules of courts of law.   The reason upon which this policy rests is that such a person will not suffer an unlawful burden from the equitable viewpoint, even if he pays what is assessed upon him; hence that courts of equity, although vested with full power, will, in the exercise of their discretion, refuse him their peculiar forms of relief."

True, there is some lack of harmony in the authorities, and it is not always easy to classify them on each side of the line dividing lack of power from irregular exercise of power, but the rule laid down in *Beaser v. Barber A. P. Co., supra,* and other cases in this court, we think is a wholesome one and recognized in the best-considered cases.   The findings of the court below which have support in the evidence settle the equities against the plaintiff.   The court found that one Gifford, through whom the plaintiff claims, signed the petition for the improvement, and that when plaintiff purchased he had knowledge of the fact and knew that the paving was being done and made no objection until after it was completed, that the cost of the improvement was reasonable, and that the premises owned by the plaintiff were actually benefited to the extent of $134.69, amount assessed against them.

Upon these facts we see no escape from the conclusion that the plaintiff cannot recover.   This, we think, is true on the grounds of estoppel if upon no other ground.   We see no obstruction to invoking the principles of estoppel.   It is said it is not available because not pleaded.   True, estoppel, as a general rule, must be pleaded, but there are some exceptions to the general rule.   Where the facts showing estoppel are in issue and a part of the case made by the pleadings, and the evidence showing estoppel is admissible for any purpose under the pleadings, estoppel is available as a defense without being specially pleaded.   *Bank of Antigo v. Ryan,* 105 Wis. 37, 80 N. W. 440; *Krekeler v. Ritter,* 62 N. Y. 372.   Of course it is always the safer and better practice

to specially plead estoppel where it is relied upon. It follows from what has been said that the judgment below was right and must be affirmed.

*By the Court.*—The judgment of the court below is affirmed.