KARLEN, Appellant, vs. TRICKEL and others, Respondents.

*January 12—February 9, 1926.*

*Mortgages: Assumption by purchaser of mortgaged property: Estoppel to defend against mortgage: Rights of mortgagor to defend against note: Holder in due course: Evidence: Sufficiency.*

1. If all of the facts out of which a claim of estoppel arose are set out in the complaint, the pleader is not required specially to plead estoppel. p. 153.
2. A subsequent purchaser, who expressly assumes and agrees to pay a prior and existing mortgage on the property purchased as part of the purchase price, is estopped to defend against such mortgage upon any ground; and the former owner having parted with his interest in the property can, so far as the mortgage is concerned, make no other or further defense than the present owner can make.   p. 154.
3. The mortgagors, who, with full knowledge of all the facts attendant upon the giving of the mortgage, sold the property to a purchaser who, as part of the purchase price, assumed and agreed to pay the mortgage, ratified and confirmed it. p. 154.
4. Although the mortgagors may be precluded from asserting the invalidity of the mortgage if the holder is a purchaser in good faith for value and without notice of infirmity, they may offset any claim for damages against their personal liability on the note.   p. 155.
5. Upon the whole case the evidence is *held* to show that plaintiff was a purchaser of the mortgage in good faith for value and without notice of infirmity.   p. 156.

APPEAL from a judgment of the circuit court for Green county: E. RAY STEVENS, Judge.   *Reversed, with directions.*

The plaintiff is a banker and money loaner, living at Winslow, Illinois, the defendant *Joe Trickel* is a farmer residing in Green county, Wisconsin, and *Emma Trickel* is his wife.   On April 30, 1920, the defendants *Trickel* made and delivered to H. L. Goode a note and mortgage for $16,000, payable two years after date, with interest at

six pe. cent.  Goode was a resident of Kansas City, and this mortgage was given to him by the defendants *Trickel* as part of the purchase price of certain land purchased by the *Trickels* in the state of Texas.  Some time during the summer of 1920 a real-estate broker living in the city of Monroe called the plaintiff and informed him that a person representing a Kansas City bank desired to sell the mortgage which the defendants *Trickel* had given to Goode. There were some negotiations, but nothing came of it.

It is the contention of plaintiff that at or about this time he talked with *Trickel* concerning the mortgage and the Texas land and *Trickel* was very much pleased with his bargain and well satisfied.  *Trickel* denies this conversation. About the 8th of October, 1920, the Monroe broker again called the plaintiff, said that the representative of the bank was again there and was desirous of selling the mortgage, and that the mortgage "could be bought reasonable." Plaintiff then made an offer of $12,400 for the mortgage. The representative of the owner agreed to let him know the next day.  On the following day, on his way from Winslow to Monroe, plaintiff drove to the home of *Trickel* for the purpose of inquiring about the mortgage.  *Trickel* was not at home, but plaintiff met him about forty rods from his house.  Plaintiff went there for the purpose of satisfying himself that the papers were genuine and all right.  *Trickel* admits meeting the plaintiff and having a conversation with him, but they are in dispute as to what was said.  On cross-examination *Trickel* gave the following version of the story: that he met *Karlen* on the road; that *Karlen* told him he was thinking of buying the $16,000 mortgage; that *Trickel* said "No, don't buy it because I heard there is something wrong with my land and I am going down there Monday."  Elmer Trickel, a son of *Joe Trickel*, testified to substantially the same thing that was testified to by his father.  It is undisputed that plaintiff

proceeded from the point where he met *Trickel* to Monroe and there purchased the mortgage, the mortgage was duly assigned, the assignment recorded, and on October 8, 1920, the plaintiff wrote the following letter:

"*Mr. Joe Trickel,*                                October 8, 1920.
     "Monroe, Wisconsin.

"Friend Joe: Confirming our conversation of this morning, beg to advise you that I have purchased from Mr. H. L. Goode your sixteen-thousand-dollar note and mortgage dated April 30, 1920, for a term of two years, bearing six per cent. from date payable annually, secured by a real-estate mortgage on your home farm of 240 acres; hence, you will make payments of interest and principal to me, or if more convenient for you the same can be left for my credit at the First National Bank of Monroe, Wisconsin.

"With my best wishes for your success, I beg you believe me with kindest personal regards,

                          "Very truly yours,
                              "FRED J. KARLEN,—"

which he sent to *Trickel* by registered mail. This letter was received at the *Trickel* home during his absence in Texas. Plaintiff claims that he met the defendant *Trickel* on two or three subsequent occasions when talk was had in regard to *Trickel* taking the $16,000 mortgage from plaintiff and also some talk in regard to *Karlen* purchasing the $17,000 mortgage subsequent to the $16,000 mortgage. However, *Trickel* denied that he had ever asked *Karlen* to buy the third mortgage of $17,000. It is undisputed that plaintiff and defendant met at numerous times, that *Trickel* never made any complaint to the plaintiff or gave him any other or further information in respect to the Texas land deal, and plaintiff did not know that *Trickel* claimed there was any infirmity in the mortgage until after the action to foreclose this and a prior mortgage was begun.

*Trickel* was a defendant in another case reported in 183 Wis. 1, 197 N. W. 329. In that case it was to his interest to show that he was not insolvent at the time of the giving

of the $17,000 mortgage hereafter referred to, and in that case it was held:

"He [*Joe Trickel,* the defendant herein] owned, it is true, the Texas lands, and at the trial he testified that on the 28th day of February, 1921, he believed them to be of considerable value."

On February 26, 1921, the *Trickels* by warranty deed sold the farm incumbered by the mortgage in question and a prior mortgage of $20,000 to the defendant *John U. Haldiman.* The deed contained the following clause:

"This conveyance is subject to a mortgage indebtedness in the sum of $36,000 which said second party agrees to assume and pay with interest from March 1st, 1921."

It is undisputed that this clause in the conveyance referred to the $20,000 note and mortgage and the $16,000 note and mortgage which was sought to be foreclosed in this action. On March 1, 1921, *Trickel* paid the interest on the note and mortgage to that date without a word of protest, making no claim that the plaintiff was not the holder in good faith. Thereafter *Haldiman* paid the interest on the note and mortgage, paying on May 24, 1922, the interest for fourteen months to April 30, 1922, and in 1923 he paid interest in full to April 30, 1923, with the exception of $100. Real estate having depreciated in value, *Haldiman* was unable to proceed further with the transaction, the mortgages were declared to be due, and this action was begun to foreclose the two mortgages for $36,000 on March 21, 1924; and in June, 1924, the defendants *Trickel* set up the defense of fraud and claimed that plaintiff was not the owner in good faith. *Emma Trickel* was made a party defendant as the wife of the defendant *Joe Trickel* and as a part owner with the defendant *Share* in a subsequent mortgage of $17,000, their respective interests being indicated in 183 Wis. 1, 197 N. W. 329. *Emma Trickel* was also a co-maker of the note and mortgage involved in this action.

In order to protect the $16,000 mortgage the plaintiff was obliged to purchase a prior mortgage of $20,000, which he did, and which it is sought to foreclose in this action, as to which there is no dispute. After the amount of the mortgages had been declared due and in order to get immediate possession of the premises, plaintiff paid to the defendant *Haldiman* $250. Upon the trial the court found:

"That in October, 1920, the plaintiff purchased said $16,000 note and mortgage of an entire stranger and paid therefor the sum of $12,400 without knowing that the indorsement on the note was the genuine indorsement of the payee; that prior to the purchase of said note and mortgage he was informed that there was something wrong with the Texas lands which were the consideration for said note and mortgage; that in purchasing said $16,000 note and mortgage plaintiff took the same with notice of an infirmity in these instruments of defects in the title of the payee named therein, and that the purchase of said note and mortgage under such circumstances amounted to bad faith."

There was judgment directing a foreclosure of the $20,000 prior mortgage, and "It is further adjudged that the H. L. Goode mortgage, described in the complaint and owned by the plaintiff, is fraudulent and void, and is not a lien upon said mortgaged premises."

From that part of the judgment directing the cancellation of the $16,000 mortgage and applying the amount realized by sale of the premises to the payment of the $17,000 mortgage, the plaintiff appeals.

For the appellant there was a brief by *W. H. McGrath* of Monroe, attorney, and *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, of counsel, and oral argument by *Mr. Otto A. Oestreich* and *Mr. McGrath.*

*J. M. Becker* of Monroe, attorney, and *Carl N. Hill* of Madison, of counsel, for the respondents.

ROSENBERRY, J. At the outset, in justice to the trial court it should be said that the proposition which we find

controlling in this case was not urged upon the attention of the court below. It is the contention of the plaintiff here that by the sale of the premises on February 28, 1921, and the execution and delivery of a deed to the defendant *Haldiman,* wherein and whereby the defendant *Haldiman* agreed and promised to pay the mortgage in question as a part of the purchase price of the premises, that the defendants *Trickel* confirmed and ratified the mortgage of $16,000 given April 30, 1920, and that they are now estopped from denying the validity of that instrument.

It is claimed on behalf of the respondents *Trickel* that the claim of estoppel was not set up in the pleadings and therefore cannot be urged here inasmuch as there are no specific findings upon the matter of waiver or estoppel, and, it being a matter of intention, that it cannot now be considered. An inspection of the pleadings shows that all of the facts out of which the estoppel arose were duly set out in the complaint and appeared without objection upon the trial. Where the necessary facts appear it is not incumbent upon the pleader specially to plead estoppel. *Bank of Antigo v. Ryan,* 105 Wis. 37, 80 N. W. 440; *Lawton v. Racine,* 137 Wis. 593, 119 N. W. 331. While it is true that ratification is a matter of intention, it is also true that one necessarily intends the natural and legal consequences of his own unequivocal act done and performed with full knowledge of all the surrounding facts and circumstances. If the $16,000 mortgage was in fact fraudulent and the payee named therein had not good title and the plaintiff was not an innocent purchaser for value without notice, the *Trickels* had full and complete knowledge on February 28, 1921, of every fact and circumstance tending to show that the mortgage was fraudulent and that the plaintiff was not a holder in due course for value without notice. Having such knowledge, they deliberately entered into a solemn agreement with *Haldiman* by which *Haldiman* was to become primarily liable as between him and the *Trickels* for the payment of

the amount of $16,000 with interest to the plaintiff.   Thereafter the plaintiff purchased the first mortgage, paid *Haldiman* $250 for surrendering possession of the premises, and proceeded upon the assumption that he was the lawful owner and holder of the mortgage and had good title thereto.

By a long line of cases it has been held that a subsequent purchaser who expressly assumes and agrees to pay a prior and existing mortgage upon property which he buys as part of the purchase price is estopped to defend against such mortgage either upon the ground of usury or on the ground of failure or want of consideration or upon any other ground.   See note, Annotated Cases, 1914A, beginning on page 185.   See, also, *White v. Schader,* 185 Cal. 606, 198 Pac. 19, 21 A. L. R. 499; *Thomas v. Mitchell,* 27 Wis. 414.

After the execution and delivery of the deed by the *Trickels* to *Haldiman,* the *Trickels* stood, as between themselves and *Haldiman,* in the relation of guarantors for the performance of *Haldiman's* contract, *Haldiman* being the primary debtor.   While of course this transaction did not make *Haldiman* the primary debtor as to the plaintiff, it is certain that *Trickel,* having parted with his interest in the mortgaged property, could, so far as the foreclosure of the mortgage is concerned, make no further or other defense than the owner of the property could make.   It is equally well settled that under the facts of this case the defendants *Trickel* were not entitled to a rescission of the transaction with Goode.   Nearly a year after, they entered into an arrangement that confirmed and ratified it after full knowledge of all the facts and after a trip to Texas to make investigation.   The testimony of *Trickel* indicates, so far as it indicates anything, that there was a mistake rather than a fraud, but he made no subsequent claim to either until the commencement of this action, continued to pay the interest, and his grantee continued to pay the interest.

While the defendants *Trickel* are estopped to assert any invalidity in the title of the plaintiff so far as the fore-

closure of the mortgage is concerned, it may be otherwise as respects the personal liability of the *Trickels*. While they are not entitled to a rescission or cancellation of the mortgage if the plaintiff is not a purchaser in good faith for value without notice of infirmity, they might counter-claim and offset any claim they may have for damages against their personal liability upon the note. It becomes necessary, therefore, for us to determine whether or not the plaintiff was a purchaser in good faith without notice. We have already set out the material facts which tend to sup-port the findings of the court. The trial court was inclined to the view that *Trickel's* recollection of the conversation had on the highway near his home was more likely to be correct than that of the plaintiff. On the other hand, all the collateral circumstances, most of which are entirely un-disputed, tend to corroborate the plaintiff's version. No argument can be based upon the amount of the discount as charging plaintiff with notice, because he was upon inquiry and went to the only man from whom he could obtain in-formation as to the validity of the mortgage. He went to the Trickel farm for the purpose of finding out whether or not there was any such infirmity. Immediately after his conversation with *Trickel* he paid $12,400 in cash for these securities, a thing that a cautious and prudent man would scarcely do if he had been informed of any defect in the title; he immediately sent notice to *Trickel* by registered letter of his purchase. *Trickel* expressed no dissatisfaction after his investigation, and at least down to the time he filed his pleadings in the case reported in 183 Wis. 1, 197 N. W. 329, he was well satisfied with the transaction, in the course of which he had given the mortgage in exchange for Texas lands. The conduct of the *Trickels* at the time of the sale of the premises, by which they required the pur-chaser of the farm to enter into an agreement to pay the mortgage, is highly inconsistent with the claim on their part that the mortgage was fraudulent.

Upon the whole case we are of the opinion that the finding that plaintiff was not a purchaser in good faith for value without notice is against the preponderance of the evidence and that it should be held that he was such purchaser and had good title to the $16,000 mortgage.

*By the Court.*—That part of the judgment appealed from is reversed, with directions to enter judgment in favor of the plaintiff in accordance with this opinion directing a foreclosure of the mortgage in the usual form.