TEEGARDEN vs. THE CITY OF RACINE.

*December 16, 1882 — January 9, 1883.*

CITY CHARTER: SPECIAL ASSESSMENTS. *Charter construed: What action of common council reviewable on appeal.*

By the charter of the city of Racine the common council was authorized to construct breakwaters, etc., to protect the shores of the city against the encroachment of Lake Michigan, and to defray the cost thereof by levying city and ward taxes, and special assessments upon real estate deemed to be specially benefited by such protection, and was required to determine the amounts, if any, to be charged as special assessments against the lots deemed to be so benefited. The charter also provided for a hearing on the subject of such assessment, and gave the right of appeal to the circuit court to any person aggrieved thereby. *Held,* that in determining what property would be benefited and, hence, should be assessed, the action of the common council was conclusive; but its decision as to the proper proportion of the whole assessment to be borne by each lot might be reviewed on appeal, and the appellant was entitled to have that question submitted to a jury.

VOL. LVI — 35

APPEAL from the Circuit Court for *Racine* County.

The case is thus stated by Mr. Justice CASSODAY:

"This is an appeal from a judgment affirming certain special assessments of benefits made upon the appellant's lands by the common council of the city on account of the contemplated construction of certain lake-shore protections therein. The notice of appeal to the circuit court from the assessments made by the common council specified as reasons for taking such appeal that '(1) such assessment is not authorized by law; (2) the proceedings of the common council in making such assessment were irregular and illegal; (3) such special assessment is partial, and assesses only a portion of the property which will be benefited by such proposed lake-shore protection; (4) the assessment upon the lots and property assessed for the purpose of such lake-shore protection is unequal, charging some lots too much and others too little; (5) if any such special assessment can be legally made, other lots and property in the vicinity of such proposed protection should also be assessed for such purpose; (6) lots one, two, and twelve, in block thirty-one, immediately adjoining some of the property assessed, and immediately west of such proposed protection, are left out of such assessment, and are not assessed for such protection; (7) the law under which such assessment is attempted to be made is unconstitutional.'

"On the defendant's proposing issues and a motion to the court for the settlement of the same, the plaintiff's counsel objected to the issues proposed, for the reason that no such issues were raised by the appeal, and that the court had no power to make different issues than those raised by the appeal, and as stated in the notice of appeal. The court, holding the act constitutional, ordered the following issues to be tried by a jury: '*First:* Will the appellant's lands in block thirty-one, First ward of the city of Racine, be benefited by the construction of said lake-shore protection named

in the proceedings from which this appeal is taken? and, if so, in what amount? *Second:* Will the appellant's lands in block thirty-two, First ward of the city of Racine, be bene-fited by the construction of said lake-shore protection named in the proceedings from which this appeal is taken? and, if so, in what amount?' To which order the counsel for the appellant objected, for the reason that the court had no power or right to order such an issue in such proceedings; but expressly requested the court, in case any issue of fact was to be found, to order the formation of each question of fact as an issue, as indicated in said notice of appeal. This re-quest was refused by the court, and the counsel for the ap-pellant excepted. The counsel for the appellant thereupon objected to the impaneling of a jury in these proceedings, for the reason that the court had no jurisdiction, and had no power of ordering a jury. This objection being overruled by the court, the counsel for the appellant excepted. The counsel for the appellant thereupon objected to the form of the oath to the jury — that it was not an action. The coun-sel for the appellant thereupon declared that, so far as the jury were concerned, he would have nothing more to do with the case.

"At the close of the testimony on the part of the defendant the court read to the jury the issues ordered, as aforesaid, and added this charge: 'The test of increase will be in the market value.' To which the counsel for the appellant ex-cepted; and also excepted to the questions presented to the jury. Whereupon, under the charge of the court, the jury answered each of the questions so submitted to them in the affirmative, and also found the amount of benefit to the lands in each of said blocks, respectively, as directed in said questions. And thereupon, and on motion of the defendant's attorney, it was adjudged that the special assessments ap-pealed from be, and the same were, thereupon affirmed; and it was further adjudged that the city recover of and from

the appellant its costs therein, taxed at $41.07; from which judgment the plaintiff brings this appeal."

For the appellant there was a brief by *Henry T. Fuller*, as attorney, and *Jenkins, Elliott & Winkler*, of counsel, and oral argument by *Mr. Winkler*.

*John B. Winslow*, for the respondent.

CASSODAY, J. By the charter the common council was authorized to construct breakwaters, parallel piling, sheet piling, piers, or other protection, as might be planned or devised for the purpose of protecting the shores of the city against the encroachment of Lake Michigan, and to defray the cost thereof by levying city and ward taxes, and special assessments upon real estate deemed to be specially benefited by such protection. In doing so it was required, first, to cause plans and specifications, and an estimate of the cost thereof, to be made and filed with the city clerk, and thereupon to determine the amounts, if any, to be charged as special assessments against any and every lot or parcel of land deemed to be benefited by such protections, and the respective amounts to be raised from the ward or city. Sec. 18, subch. 6, ch. 313, Laws of 1876, as amended by sec. 18, subch. 6, ch. 180, Laws of 1880. The charter also provides for a hearing upon the subject of such assessment, and of objections, if any, to such assessments, and deciding upon the same, and gives the right of appeal therefrom to the circuit court to any party feeling aggrieved thereby, and provides that such appeal shall be the only remedy against such assessment. Sec. 19.

Under these provisions the trial court, in advance, restricted all inquiry to the simple question whether the appellant's lands would be benefited by the proposed improvement, and, if so, in what amounts. This restriction excluded from the jury the question whether any other lands were included in the assessment, and, if so, whether the appellant's lands

were charged with any more than their proportionate share of the amount of the whole assessment. Such exclusion can be justified only on the theory that each lot or parcel of land included in the assessment is to pay just the amount of its increased value by reason of the improvement, regardless of the question whether the aggregate amount of the whole assessment is equal to the amount of the cost of the proposed improvement, or far above or much below. The charter, however, limits the amount of the assessment to the cost of the improvements. Such cost was clearly to be ascertained from plans and specifications, and on estimate. Of course the common council was required to determine what property would be benefited, and hence what property should be assessed. To that extent we are inclined to think that, in the absence of fraud or intentional and unjust discrimination, the action of the common council must be deemed conclusive.

Mr. Cooley, discussing taxation by special assessment, says that " the whole subject of taxing districts belongs to the legislature; so much is unquestionable. The authority may be exercised directly, or, in the case of local taxes, it may be left to local boards or bodies; but in the latter case the determination will be by a body possessing for the purpose legislative power, and whose action must be as conclusive as if taken by the legislature itself." Cooley on Taxation, 449. The question was referred to inferentially, but not decided, in *State v. Fond du Lac*, 42 Wis., 295, and *Pier v. Fond du Lac*, 38 Wis., 477. The fixing of the limits of the taxing district, or, in other words, designating the property which will be benefited and hence to be assessed, must necessarily be done by a tribunal representing all parties interested, including the public. In the case before us the common council is such a tribunal. Each lot-owner having the right to appeal, it is very obvious that should the jury upon each appeal (in case of several) have the right to fix new limits to the taxing

district — that is, to leave out some lots which the common council had included, and include other lots which the common council had left out — then there might be as many taxing districts as there were juries in such appeals, and endless confusion would be the result. There is no expression in the charter indicating such a legislative intent, and we are not disposed to incorporate one by mere inference to secure such absurd results.

We therefore conclude that the third, fifth, and sixth reasons specified for taking the appeal were untenable, and hence it was not error to refuse to submit those questions to the jury as requested by the appellant's counsel. It may be that in case of fraud, or of a palpably unjust and intentionally oppressive assessment, the courts might afford relief in some form of action. But that question is not here presented, and of course is not here determined. But an appeal by a single party simply brings before the court the question whether the appellant's lands are charged with any more than their just proportion of the whole assessment. But the charter clearly gave to persons interested the right to be heard before the common council upon objections to such assessment, and required the common council to decide upon all objections raised, and then gave to any party feeling aggrieved by such assessment the right of appeal therefrom in the circuit court. This right of appeal therefrom must necessarily give the right to a rehearing upon the pertinent objections so raised before the common council, and so decided adversely to such party. This, we think, extends to a re-examination of the proper proportion of the whole assessment which each lot or parcel of land should bear. This being so, we are of the opinion that the appellant was entitled to have that question submitted to the jury. It is true, it was not requested in apt language, but it was clearly suggested by the fourth reason specified for taking the appeal, and counsel for the appellant did, in effect, request that

the question therein suggested should be submitted as an issue of fact to be tried by the jury, and the same was refused by the court and the appellant excepted. If, as there suggested, the assessment upon the lots and property assessed was unequal, charging some lots too much and others too little, and the appellant's lands were assessed too much,— that is, more than their proportionate share of the whole assessment,— then she was aggrieved within the meaning of the charter, and had the right to a rehearing upon that question. Such rehearing was refused by the court, and a hearing forced upon a question not involved in the appeal. As counsel for the city argues, the determination of the common council was final as to whether the appellant's lands would be benefited by the proposed improvement, and yet that was one of the questions submitted.

*By the Court.*— For the reasons given, the judgment of the circuit court is reversed, and the cause is remanded for a new trial upon appropriate issues to be submitted.