State ex rel. Vaughn vs. Mayor and Common Council of Ashland.

THE STATE EX REL. VAUGHN, Respondent, vs. THE MAYOR AND COMMON COUNCIL OF THE CITY OF ASHLAND, Appellants.

*March 29 — April 17, 1888.*

*Municipal corporations: Assessments for street improvements: Bridges: Certiorari: Appeal from common council.*

1. Under a city charter making the "grading, graveling, paving, planking, or macadamizing" of any street chargeable to the lots abutting thereon, the expense of raising a street to the established grade by the construction of a pile bridge over a ravine is not so chargeable, especially where the charter further provides for paying the expense of building bridges by levying a special tax.
2. Where the board of public works and common council of a city have attempted, without authority of law, to charge upon private property the cost of building a bridge, their proceedings may be reviewed on *certiorari*, although the city charter has provided that an appeal shall be the only remedy of the owner for the redress of any grievance he may have by reason of the making of an improvement or of the amount of the cost thereof charged upon his land.

APPEAL from the Circuit Court for *Ashland* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

April 30, 1887, the city surveyor estimated the cost of an entirely new pile bridge on Second street, between Lake street and Vaughn avenue, in Ashland, at $2,036. May 16, 1887, the board of public works in the city reported that they had viewed and considered the lots and lands abutting on Second street which they deemed would be benefited by placing Second street, between Lake street and Vaughn avenue, at the established grade, and that in their opinion the city at large should be charged with one third of the cost of such improvement on account of said street being crossed at that point by a ravine, and that the remaining two thirds of the cost should be charged to lots 1 to 12, inclusive, in block 73, and lots 12 to 24, inclusive, in block 113, all in Vaughn division, which in their opinion would be actually benefited by such improvement when completed as per the surveyor's estimate. May 17, 1887, the common council directed the board of public works to view said several lots and consider the amount to be made chargeable according to law against said lots for such improvement, and to give public notice of such assessment for review and correction, and to advertise for bids for doing such work. On the same day the said board thereupon assessed said several lots as directed, on the basis of the surveyor's estimated cost of $2,036, of which $678 was to be paid by the city, and $1,358 chargeable to said lots, with descriptions, etc., in detail. May 18, 1887, the board gave public notice of such assessment of benefits and damages for placing said portion of said Second street at the established grade, " by causing a new pile bridge to be built," and that such report would be open for review and correction at a place and times named, when all persons interested would be heard by said board. June 14, 1887, the common council, by resolution, confirmed the assessment of the board of public works made upon the lots abutting upon Second street, between Lake street and

·Vaughn avenue; and on the same day the common council, by resolution, authorized the board to enter into a contract on behalf of the city " for the building of said bridge with the lowest responsible bidder; said contract to be signed by the mayor."

June 28, 1887, a writ of *certiorari*, issued by the circuit court to said mayor and common council upon the verified petition of said Emiline E. Vaughn, a resident and tax-payer of said city and the owner of a large number of said lots, was served on said mayor.    July 12, 1887, the said board reported to the common council that they had examined and approved the said new pile bridge constructed under contract, and that the actual cost thereof exceeded said estimate by $36.41.    July 18, 1887, the city authorities made return to the writ in substance as above stated.    Upon the hearing of the matter, the court held, in effect, that, in so far as the proceedings attempted to charge the cost of such improvement against the lots fronting thereon, they could not be sustained, and accordingly that the assessments against said lots should be reversed.    From the judgment entered thereon accordingly, the mayor and common council appeal.

For the appellants there was a brief by *Dockery & Kingston*, and oral argument by *Mr. E. J. Dockery*.    They contended, *inter alia*, (1) that *certiorari* is not the proper remedy, and the relator should have resorted to an independent . action; (2) that the improvement in question is not a bridge; and (3) that the city is not excluded by the charter from building bridges by assessments against abutting lot-owners. At least it may charge the benefits derived from such bridges to the property benefited.    To the point that the ravine is not a watercourse and the city would have had a perfect right to have raised an embankment of sand, gravel, or any other proper material in grading said street to the proper level, and to have assessed the benefits to the abutting lots

as here, they cited *Hoyt v. Hudson*, 27 Wis. 656, 660, *et seq.; Smith v. Milwaukee*, 18 id. 63, 67.

For the respondent there was a brief by *Miles & Shea*, and oral argument by *J. J. Miles* and *W. M. Tomkins*.

CASSODAY, J. The improvement mentioned consisted almost wholly in building an entirely new pile bridge across the ravine mentioned. The only additional improvement suggested is a sidewalk on the north side of the street; but the cost of that is not given, and must have been comparatively small. The surveyor's estimate, which appears to have been acted upon throughout, gives the total cost at $2,036, of which 64,000 feet of board measure timber is given at $1,536, and $500 for piles as completed in the structure, including iron spikes and price of driving the piles. If the lots were not chargeable with the building of the bridge, then the whole assessment, made under the circumstances stated, was unauthorized. The rule is well settled that the corporate authorities of a city possess only such powers as are expressly granted by legislative enactment, and such others as are necessarily or fairly implied in or incident to the powers thus expressly granted, or essential to the declared objects and purposes of the corporation. *Bell v. Platteville, ante*, p. 139. By the charter, the common council were empowered "to order and contract for the making, grading, paving, and repairing and cleaning all streets and parts of streets, . . . and to provide for the construction of sidewalks, or the repair of the same, *in the manner*" *therein mentioned.* Sec. 2, subch. 11, ch. 127, Laws of 1887. "The grading, graveling, paving, planking, or macadamizing to the center of any street or alley, and the grading, graveling, and macadamizing, planking, or paving of any sidewalk, the paving of any gutter, and the construction of cross-walks; where there is no intersection of streets, shall be chargeable to and pay-

able by the lots fronting or abutting upon such street, alley, sidewalk, or gutter, to the amount which such grading, graveling, macadamizing, planking, or paving shall be adjudged by said board to benefit such lots: provided, however, that, in case of paving a street, a portion of the cost, not exceeding, however, one third thereof, may be paid by the city at large if the common council so determine." Sec. 4, Id. Certainly, it cannot be seriously claimed that the building of a pile bridge of the character indicated comes within the description of "grading, graveling, paving, planking, or macadamizing," thus authorized to be charged to the several lots fronting thereon; and nothing else is so chargeable. It is argued with much force and ingenuity by the learned city attorney that the common council had a discretionary power in selecting the material with which to bring the street to grade through and over the ravine in question. Undoubtedly they have such discretion so long as they keep within the powers thus granted; but they have no authority whatever, much less such discretionary authority, outside of the powers so granted by the charter. Besides, the charter expressly provides for paying the expense of building bridges by levying a special tax. Sec. 3, subch. 8, Id. It is claimed that this only applies to bridges over some stream of water. But it does not say so, and we have recently held that bridges over ravines stand upon the same footing as bridges over streams. *State ex rel. Spring Lake v. Pierce Co., ante,* p. 321. It follows that the special assessments against the lots in question, for paying a portion of the expenses of the bridge, were without authority of law, and therefore void.

2. But it is urged by the learned city attorney that a writ of *certiorari* will not lie where there is another adequate remedy, and that the charter gives a remedy by appeal, and makes it exclusive. Secs. 9, 10, subch. 11, ch. 127, Laws of 1887. But, as we understand, this remedy

by appeal is only given by the charter as to matters within the jurisdiction of the common council. Certainly it was not designed to take away the remedy given by· writ of *certiorari.* The jurisdiction of the circuit court to issue such writ is secured by the constitution of the state, and of course cannot be taken away by legislative enactment. Sec. 8, art. VII.

*By the Court.*— The judgment of the circuit court is affirmed.