LAMASCO REALTY COMPANY, Appellant, vs. CITY OF MIL-
WAUKEE, Respondent.*

STANDARD OIL COMPANY, Appellant, vs. SAME, Respondent.

NAKINA REALTY COMPANY, Appellant, vs. SAME, Respond-
ent. [Two cases.]

A. GETTELMAN BREWING COMPANY, Appellant, vs. SAME,
Respondent.

MAJESTIC REALTY CORPORATION, Appellant, vs. SAME,
Respondent.

WISCONSIN ELECTRIC POWER COMPANY, Appellant, vs.
SAME, Respondent.

MARINER REALTY COMPANY, Appellant, vs. SAME, Respond-
ent.*

*December 10, 1942—March 9, 1943.*

* Motion for rehearing denied, without costs, on April 2, 1943.

360

364

368

For the appellants there were briefs by *Richardson, Reeder, Stearns & Weidner,* attorneys for the Lamasco Realty Company; *Quarles, Spence & Quarles,* attorneys, and *J. V. Quarles* of counsel, for the Standard Oil Company; *Shaw, Muskat & Paulsen,* attorneys for the Nakina Realty Company, the A. Gettelman Brewing Company, the Majestic Realty Corporation, and the Wisconsin Electric Power Company; and *Lines, Spooner & Quarles,* attorneys for the Mariner Realty Company, and oral argument by *Martin R. Paulsen, Lester S. Clemons,* and *Fraley N. Weidner,* all of Milwaukee.

For the respondent there were briefs by *Walter J. Mattison,* city attorney, and *Ronold A. Drechsler,* assistant city attorney, and oral argument by *Mr. Drechsler.*

ROSENBERRY, C. J.   Some question having arisen here as to what questions were presented to the trial court by the

appeals from the confirmation of the assessment by the common council, the parties entered into a stipulation that all of the questions raised and considered by the trial court and presented by the record might be considered upon the appeal. This stipulation met with the approval of the court because the matter upon the complaints so-called and the grounds of appeal stated in the notices of appeal were in substance and effect treated as actions for declaratory relief in the court below. The questions presented to the trial court having been fully argued here and all of the facts covered by the stipulation of facts made in the trial court, it seemed unwise to send the case back for retrial in another form. The trial court gave the matter exhaustive consideration and under the peculiar circumstances of these cases we see no reason why the matter should not be fully treated here. See *State ex rel. Owen v. Donald* (1915), 160 Wis. 21, 31, 151 N. W. 331.

The questions involved may be stated as follows:

### CONSTITUTIONAL QUESTIONS.

(1) Does the home-rule amendment to the Wisconsin constitution (sec. 3, art. XI), and the charter ordinances enacted pursuant thereto by the city of Milwaukee, make ch. 275, Laws of 1931 (the Kline law), inapplicable to the city of Milwaukee?

(2) Is ch. 275 general legislation or special legislation (sec. 31, art. IV) and its bill a local bill (sec. 18, art. IV)?

### QUESTIONS ARISING UNDER CH. 275.

(3) Are the provisions of sec. 9 (1), ch. 275, relating to exemptions invalid because there is exempted thereby from assessment of benefits the property enumerated therein, that is, property owned by the United States, the state, municipalities, churches, labor unions, veterans' organizations, and other charitable or *quasi*-charitable institutions?

(4) Does sec. 2, art. XI, of the Wisconsin constitution, require the unanimous verdict of the jury on the question of necessity when the city of Milwaukee seeks to condemn private property under the Kline law?

(5) Are the assessments for benefits invalid because not made upon a proper basis?

(6) What issues are presented by an appeal from the confirmation of assessment of benefits and damages:

(a) May a property owner on appeal amend his notice of appeal by asserting additional grounds of appeal after the twenty-day period for appeal has expired?

(b) What is the issue on appeal under the statute?

(c) May a property owner on appeal raise objections to the assessment not presented to the board of assessment or common council?

In addition to the foregoing statement of questions involved other questions are raised relating to separate appeals. Unless disposed of in connection with the foregoing questions, such questions will be stated and considered in connection with the facts of the case to which they relate.

(1) Does the home-rule amendment to the Wisconsin constitution (sec. 3, art. XI), and the charter ordinances enacted pursuant thereto by the city of Milwaukee, make ch. 275, Laws of 1931 (the Kline law), inapplicable to the city of Milwaukee?

Sec. 3, art. XI, of the Wisconsin constitution, provides:

"Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. . . ."

The argument is that charter ordinance No. 20 which was adopted by the city of Milwaukee and became effective on the

19th day of August, 1927, provides for special assessments for benefits, for grading, etc. The pertinent part is as follows:

"Sec. 2. The grading, graveling and planking, macadamizing or paving to the center of any street or alley, and the grading, graveling, macadamizing, planking, paving, sodding and curbing of any sidewalk, and the paving of any gutter, shall be chargeable to and payable by the lots fronting or abutting upon such street, alley or gutter, or fronting, abutting, or adjacent to such sidewalk, to the amount which such grading, graveling, macadamizing, planking, paving, sodding and curbing shall be adjudged by said commissioner to benefit such lots."

This charter ordinance is supposed to be in conflict with sec. 3 (2), ch. 275:

"Said plan may combine any or all of the following improvements, to wit, the erection of bridges or viaducts, the opening, widening and extension of any street or alley, arterial highway, parkway or boulevard, and the grading, paving or repaving of any street, arterial highway, parkway or boulevard including the construction of gutters, curbs or sidewalks for the same, and the acquisition, extension and improvement of any memorial ground, public square, park or playground."

It is stated that from the comparison of the charter provision and sec. 3 (2), ch. 275, it clearly appears that the city has by the charter ordinance legislated upon the subject matter included in ch. 275 and because ch. 275 does not "with uniformity affect every city," ch. 275 is to that extent inapplicable. It is said that there are other charter ordinances relating to the subject matter included in ch. 275 which are in conflict with that chapter, for instance, ch. 275 provides that no extension of any assessment due and payable shall be granted, which is said to be in direct conflict with charter ordinance No. 81. The so-called conflicts relate to matters of detail covered by ch. 275 which appear to be in conflict with the details of certain charter ordinances relating to streets, alleys, parkways, boulevards, etc.

It is considered that this argument overlooks entirely the nature of ch. 275. Its title is as follows:

"An act empowering any city to plan and make certain public improvements, to acquire or condemn property for public purposes and improvements, to make assessments of benefits and damages for such improvements and acquisitions of property, to finance the same, and providing the procedure therefor."

It is certain that the common council of the city of Milwaukee cannot invest itself with the power to condemn private property for public improvements. Private property is taken for public use in the exercise of the sovereign power of the state. *Muscoda Bridge Co. v. Worden-Allen Co.* (1928) 196 Wis. 76, 219 N.W. 428. The power of eminent domain is the only one of the sovereign powers of the state which may be delegated to persons other than officers and agents of the state, and indeed when it is so delegated it can be exercised only for the acquisition of property for a public purpose. Municipalities, including cities, derive the power to condemn property from legislative enactment. There is no constitutional provision relating to the exercise of the power of eminent domain or of the right of the state to delegate it. Subject to the constitutional limitations it is the province of the legislature to prescribe how and by whom the power is to be exercised. It is said to be one of the inherent powers of the state. *United States v. Jones* (1883), 109 U. S. 513, 3 Sup. Ct. 346, 27 L. Ed. 1015. Sec. 1 of ch. 275 confers upon any city of the first class the right to exercise this sovereign power for certain specified purposes, and in addition to specifying the public purposes for which it may exercise it provides:

". . . The power of determining the damages caused by the exercise of the aforesaid power and by any public improvement herein authorized, and the power of making, levying and

collecting special benefit assessments upon property benefited, and the power of financing improvements, and all powers conferred by this act, in the manner hereinafter provided."

It is clear from this declaration that the powers granted to cities of the first class are incident to the exercise of the power of eminent domain. A statute granting to a city the right to exercise the power of eminent domain does not deal with the "local affairs" of the city. The mere fact that in some of its details ch. 275 may be in conflict with the provisions of some of the ordinances of the city of Milwaukee does not invalidate ch. 275 or make it inapplicable to that city. The law applies to all cities of the first class and is a general law. (See question 2.) It does not deal with "local affairs" in the constitutional sense. It is only when a statute deals with "local affairs" that ordinances may supplant the legislative act unless it affects with uniformity every city or every village. The granting of part of its sovereign power by the state is certainly a matter of state-wide concern and not a local affair. In the enactment of a law of state-wide concern the state may classify cities. *Van Gilder v. Madison* (1936), 222 Wis. 58, 84, 267 N. W. 25, 268 N. W. 108. Ordinances adopted by the common council do not conflict with a statute general in character which does not deal with "local affairs."

(2) Is ch. 275 general legislation or special legislation (sec. 31, art. IV) and its bill a local bill (sec. 18, art. IV)?

Sec. 18, art. IV, of the constitution, provides:

"No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

Sec. 31, art. IV, of the constitution, provides:

"The legislature is prohibited from enacting any special or private laws in the following cases: . . . 2d. For laying out, opening or altering highways [etc.] . . . 6th. For assessment

or collection of taxes or for extending the time for the collection thereof. . . . 9th. For incorporating any city, town or village, or to amend the charter thereof."

In support of the contention that ch. 275 violates these constitutional provisions we are favored with an argument that to permit a classification of cities which at present includes only the city of Milwaukee in the first class is to permit and to approve of the violation of these provisions.

The rule relating to the classification of cities was laid down in *Johnson v. Milwaukee* (1894), 88 Wis. 383, 60 N. W. 270. It was there held: (1) That a classification must be based upon substantial distinctions which make one class really different from another; (2) the classification adopted must be germane to the purpose of the law; (3) the classification must not be based upon existing circumstances only. It must not be so constituted as to preclude addition to the numbers within the class; (4) to whatsoever class a law may apply, it must apply equally to each member thereof.

To this was added a fifth by *State ex rel. Risch v. Trustees* (1904), 121 Wis. 44, 55, 98 N. W. 954. The characteristics of each class should be so far different from these other classes as to reasonably suggest at least having regard to the public good of the need of substantially different legislation. In *State ex rel. Risch v. Trustees* it was held:

"It being established that there may be a constitutional class of cities for the purposes of general legislation, the fact that at the time of a particular enactment applicable thereto there is only one member thereof does not militate against the validity of the legislation." Citing *Adams v. Beloit* (1900), 105 Wis. 363, 81 N. W. 869.

In a dissenting opinion in that case, CASSODAY, C. J., advanced the arguments now made in support of their propositions by counsel for the appellants. He contended that the

construction placed upon the constitutional provision nullified it so far as a private law amending the charter of any city was concerned. The court held to the contrary. *State ex rel. Risch v. Trustees, supra; Wisconsin Central R. Co. v. Superior* (1913), 152 Wis. 464, 140 N. W. 79.

Time after time various statutes applicable to the city of Milwaukee have been assailed on the ground that they were not general laws but special acts relating to local matters and therefore within the constitutional prohibition. A very substantial argument can be made that as a matter of fact classification does permit to some extent an evasion of the constitutional prohibition against the enactment of private and local laws without complying with the constitutional requirement found in secs. 18 and 31 of art. IV. Nevertheless if the classification itself is valid such laws have been uniformly sustained. It is a well-known fact that Milwaukee is the only city of the first class in the state; that it is not probable that that class will be augmented at any time within the foreseeable future, nevertheless the requirements of a metropolitan city like Milwaukee as against the smaller municipal corporations of the state are so obvious that any other result would be opposed to the public welfare. In any event the rule having been laid down long ago, and uniformly adhered to, it is not the function of the court now to place a different construction upon these constitutional provisions. The construction has been approved *sub silentio* for many years and is firmly established. *Lumsden v. Cross* (1860), 10 Wis. *282; *Johnson v. Milwaukee* (1894), 88 Wis. 383, 60 N. W. 270; *Milwaukee County v. Isenring* (1901), 109 Wis. 9, 85 N. W. 131, and cases cited; *Milwaukee County v. City of Milwaukee* (1937), 223 Wis. 674, 271 N. W. 399.

(3) Are the provisions of sec. 9 (1), ch. 275, relating to exemptions invalid because there is exempted thereby from assessment of benefits the property enumerated therein, that is,

property owned by the United States, the state, municipalities, churches, labor unions, veterans' organizations, and other charitable or *quasi*-charitable institutions?

While a special assessment is considered as a tax for some purposes there is a wide distinction between special assessments and a tax levied generally for the support of the government.

In *Dalrymple v. Milwaukee* (1881), 53 Wis. 178, 185, 10 N. W. 141, the court said:

> "The theory of all taxation is, that taxes are imposed as a compensation for something received by the taxpayer. General taxes are paid for the support of government in return for the protection to life, liberty and property which government gives. Assessments of benefits accruing to property by reason of public improvements rest on the same principle. Both forms of taxation are for public purposes, and both are alike burdens upon property. The only substantial distinction between the two forms is, that general taxation is based upon value and subject to the constitutional rule of uniformity, while assessments are not."

See also *Milwaukee v. Taylor* (1938), 229 Wis. 328, 341, 282 N. W. 448; *Bond v. Kenosha* (1863), 17 Wis. *284.

That property may be exempted from special assessment as well as from general taxation and that the power to declare the exemption rests in the legislature is well established. In *Milwaukee E. R. & L. Co. v. Milwaukee* (1897), 95 Wis. 42, 46, 48, 69 N. W. 796, the question was clearly presented. It appeared that the law imposing a license fee upon street railway companies provided that it—

> "shall be in lieu of all other taxes, assessments and licenses of any such corporation, and all personal property, franchises and real estate owned by such company or corporation shall be exempt from assessment and taxation."

The city attempted to assess the property of the company for special taxes. The court said:

"The power of imposing assessments, such as are here in question, is essentially a legislative power delegated to the city and its proper officers, in like manner as the power of general taxation. : . . The power of the legislature to exempt particular classes or kinds of property from taxation is well settled. Assessments are special taxes, and the power to exempt particular classes or kinds of property from assessments stands on as clear and undoubted ground as the power to make exemptions, in such cases, from general taxation."

While exemptions from general taxation are subject to the rule of uniformity (*Lawrence University v. Outagamie County* (1912), 150 Wis. 244, 136 N. W. 619) the whole matter of exemption from special assessments is within the discretion of the legislature. The contention that ch. 275 is invalid because of the exemptions cannot be sustained.

(4) Does sec. 2, art. XI, Wisconsin constitution, require a unanimous verdict of a jury on the question of necessity when the city of Milwaukee seeks to condemn private property under the Kline law?

While this question is not presented by the appeal because none of the parties to the appeal are in a position to raise it, nevertheless in view of the fact that the matter has been fully argued and considered by the trial court and this court, we shall answer it. The answer may be useful in subsequent cases arising under the act.

As has already been stated the city attorney was directed to institute an action in the circuit court for Milwaukee county against Elsie Suetterly Taylor and others as owners of the premises involved in the widening of West Kilbourn avenue for the purpose of establishing the necessity of taking twenty-nine parcels of real estate. In response to a question submitted by the court inquiring whether it was necessary to acquire the specifically described parcels of land, eleven jurors answered "Yes" and one juror answered "No." Appellants claim that this verdict is no verdict and therefore the question

of necessity has not been determined as required by sec. 2, art. XI, of the constitution:

"No municipal corporation shall take private property for public use, against the consent of the owner, without the necessity thereof being first established by the verdict of a jury."

At the time the constitution was adopted this meant a common-law jury and not a body provided for by ch. 6 of the Milwaukee city charter, 1904 edition. *State ex rel. Allis v. Wiesner* (1925), 187 Wis. 384, 204 N. W. 589. While the city attorney was directed to commence an action, necessity of taking is determined in a special proceeding and not in an action. *State ex rel. Allis v. Wiesner, supra.*

Sec. 5, art. I, of the constitution, provides:

"The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy. . . ."

In 1922 the following proviso was added to the section:

"Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five sixths thereof."

Pursuant to the provisions of the amendment the legislature adopted what is now sec. 270.25 (1), Stats.:

"A verdict or answer agreed to by five sixths of the jurors shall be the verdict or answer of the jury."

Title XXV, Stats., Procedure in Civil Actions, relates to actions and special proceedings in circuit courts and other courts of record. Sec. 260.01, Stats.

Sec. 263.40, Stats., provides:

"In special proceedings pending on appeal, the court may direct an issue of fact to be made up between the parties by

complaint and answer, and such issue shall be tried by the court, or by the jury, as the court shall prescribe."

Under the provisions of sec. 7 (3), ch. 275, provision is made for the making up of the issue. It is then provided:

"(3) ... The question of the necessity of such taking shall be determined by a jury impaneled and obtained in the same manner as in any civil action in such court. ..."

Since the enactment of what is now sec. 270.25 (1), Stats., in all civil actions and proceedings, it has been considered that a jury is composed of twelve jurors; that a verdict or answer returned by ten or more of the twelve jurors is a valid verdict. It is argued that the language of the proviso to the effect that a valid verdict in civil cases may be based on the vote of a specified number of the jury, not less than five sixths thereof, does not apply to a condemnation proceeding because it is not a civil case. The word "case" is not one of definite legal content. It relates to matters of fact or conditions involved in a controversy as distinguished from questions of law. As used in the amendment to the constitution the term "civil case" is intended to include and does include civil proceedings as distinguished from criminal actions. Sec. 263.40 already set out clearly indicates that issues of fact may arise in special proceedings and when they do so arise they may be tried by the same constitutional jury that tries an issue of fact arising in an action. While ch. 275 uses the term "action" in sec. 7, and provides that a complaint shall be served to which an answer may be made, the verdict of the jury is taken in a special proceeding and not in an action. *Milwaukee L., H. & T. Co. v. Ela Co.* (1910) 142 Wis. 424, 125 N. W. 903. See *In re Henry S. Cooper, Inc.* (1942) 240 Wis. 377, 2 (2d) N. W. 866, where the distinction is fully discussed.

The verdict which was returned by more than five sixths of the jury is a valid verdict.

(5) Are the assessments for benefits invalid because not made upon a proper basis?

We have already set forth at some length the basis upon which the board of assessment proceeded. By sec. 9 (3), ch. 275, it is provided:

"(3) . . . Having ascertained the damages to the property taken or injured and the estimated expense of the proposed improvement and also the cost of the proceedings, the said board shall proceed to apportion and assess the said damages or such portion thereof as it shall determine to be chargeable to the property benefited, together with the whole or any part of the expense of the proposed improvement or cost of the proceedings, upon the property by it deemed benefited, *in proportion to the benefits resulting thereto from the proposed improvement,* as nearly as may be, and shall describe the property upon which said assessment is made."

Sec. 20 (3), ch. 275, provides:

"If on any appeals under sections 10 or 20 of this act the damages shall be increased or the benefits shall be reduced, the increase of damages to be paid or the difference in benefits to be received by such city shall be provided and made up out of any fund available to pay the city's share of the cost of the improvement. . . .

"When the benefits assessed against any piece of property are reduced or increased on an appeal the amount of the benefits assessed and the instalments of benefits together with the proper amount of interest thereon as herein provided to be placed on the tax roll shall be reduced or increased proportionately and, if such assessment of benefits or any instalments thereof shall already have been placed upon such tax roll, the same shall be corrected after the determination of such appeal.

"If the whole or any instalment of any benefits assessed shall have been paid and thereafter such benefits shall be reduced on appeal, such city shall refund to the person entitled thereto the excess with interest out of any fund herein provided."

It would seem that the provisions of ch. 275 in every way fully protect the property owner against an assessment not

made in proportion to benefits. In *Dickson v. Racine* (1884), 61 Wis. 545, 21 N. W. 620, the court had under consideration a statute which in some respects is similar to the provisions of ch. 275. On the basis of the *Dickson Case* counsel for the appellants argue that the trial court was in error in holding that—

"Upon appeal it is subject to assessment for the full amount of the benefits to its property, as is the property of all appellants"—

for the reason that the common council by resolution provided that 40 per cent of the cost of the project should be assessed to the owners of the property in the benefited area. We do not so interpret the resolution of the common council. It was treated by the board of assessment as a maximum. The board did not endeavor to make an assessment other than as they were directed by the common council by resolution of February 13, 1939, in which they were directed to proceed according to law to determine the damages to be paid for each piece of property taken or injured and the amount of benefits to be assessed against each piece of property benefited within the established benefit district. This case differs in one important particular from the *Dickson Case*. In the *Dickson Case* the entire cost of the improvement was to be assessed against the benefited property. Upon the appeal the questions submitted to the jury were (p. 546) :

"1. 'Was the south one third of lot 5, block 12, in the First ward, charged with its proper proportion of the assessment for benefits for the extension of State street, in the First ward of the city of Racine?' 2. 'If to the above question you answer "no," state what sum should be assessed against it.' "

It was held that the action of the common council in approving the property to be benefited was conclusive, the area having been first determined by three commissioners. The determination of the court in the *Dickson Case* was based

upon *Teegarden v. Racine* (1883), 56 Wis. 545, 550, 14 N. W. 614, which arose under the same charter provision. In the *Teegarden Case* the court said:

"The appeal we think extends to a re-examination of the proper proportion of the whole assessment which each lot or parcel of land should bear. This being so, we are of the opinion that the appellant was entitled to have that question submitted to the jury. . . . If, as there suggested, the assessment upon the lots and property assessed was unequal, charging some lots too much and others too little, and the appellant's lands were assessed too much,—that is, more than their proportionate share of the whole assessment,—then she was aggrieved within the meaning of the charter, and had the right to a rehearing upon that question."

Whether the amount of the assessment was greater than the benefits is the issue reserved for further consideration by the trial court. Paragraph 6 of the judgment is as follows:

"Any and all of the issues or merits involved in this appeal are disposed of in favor of respondent, city of Milwaukee, reserving and retaining the action only for trial upon the issue as to whether or not any benefits accrued to the property of the appellant, assessed benefits, from or by the improvement in question, and, if so, the amount thereof."

The trial court was in error in holding that whether the property was benefited was for the jury. (*Dickson v. Racine, supra.*)

Appellants cannot by attacking the method used by the board of assessment in making the assessment establish the invalidity of the assessment. The statute prescribes no procedure. The board of assessment might have followed an illogical procedure and still have arrived at a correct result. The appeal deals with the result reached, not with the method by which it was reached. The assessments as confirmed by the council are not invalid because of the method employed by the board of assessment.

(6) What issues are presented by an appeal from the confirmation of assessment of benefits and damages:

(a) May a property owner on appeal amend his notice of appeal by asserting additional grounds of appeal after the twenty-day period for appeal has expired?

(b) What is the issue on appeal under the statute?

(c) May a property owner on appeal raise objections to the assessment not presented to the board of assessment or common council?

These questions will be considered together.

The trial court held, and we think correctly, that the proper remedy where the entire proceeding is void because of want of power and also where the irregularity or illegality vitiates the entire assessment is by attack in a direct proceeding for that purpose; that sec. 11 of the act, relating to the exclusiveness of the remedy of appeal, refers only to illegality and irregularities affecting the amount of damages or benefits which may be corrected by the verdict on appeal.

The provisions of ch. 275 relating to appeal from determination of the common council very closely resemble the provisions of the charter of the city of Racine, which the court had under consideration in the case of *Teegarden v. Racine, supra.* While the language used is not identical, it is the same in substance.

Sec. 12, title V, of the Charter Law, ch. 313, Laws of 1876, provided:

"Any person or persons owning or having any interest in any property affected by such assessment, may, within twenty days after the confirmation of such assessment by the common council, appeal therefrom to the circuit court of Racine county, by filing with the clerk of said circuit court his notice of appeal, setting forth therein his interest in the premises *and the grounds of his appeal. . . .*"

Ch. 275 provides:

"Sec. 10 (2). The appeals shall be tried as ordinary issues of fact are tried in said circuit court, the form of the issue being subject to the direction of the court. . . .

"Sec. 11. An appeal to the circuit court as provided in this act shall be the only remedy for damages sustained by the acts or proceedings of the city in the matter to which such assessment relates, and shall be the exclusive method of review of any assessment of benefits made therein; and no action at law or in equity shall be had or maintained for such injuries on account of such acts or proceedings."

The notice of appeal to the circuit court from the assessments made by the common council in the *Teegarden Case, supra,* specified as the reasons for taking such appeal that, (1) such assessment is not authorized by law; that (2) the proceedings of the common council in making such assessment were irregular and illegal; (3) that such special assessment is partial and assesses only a portion of the property which will be benefited by such proposed lake-shore protection; (4) the assessment upon the lots and property assessed for the purpose of such lake-shore protection is unequal, charging some lots too much and others too little; (5) if any such special assessment can be legally made, other lots and property in the vicinity of such proposed protection should also be assessed for such purpose; (6) lots 1, 2, and 12, in block 31, immediately adjoining some of the property assessed, and immediately west of such proposed protection, are left out of such assessment and are not assessed for such protection; (7) the law under which such assessment is attempted to be made is unconstitutional. The court held the act constitutional and ordered the following issues to be tried by a jury (p. 546) :

"First : Will the appellant's lands in block thirty-one, First ward of the city of Racine, be benefited by the construction of said lake-shore protection named in the proceedings from which this appeal is taken? and, if so, in what amount? Second : Will the appellant's lands in block thirty-two, First ward of the city of Racine, be benefited by the construction of said lake-shore protection named in the proceedings from which this appeal is taken? and, if so, in what amount?"

Counsel for the appellant objected on the ground that the court had no power or right to order such an issue in such proceedings, but expressly requested the court, in case any issue was to be found, to order each question of fact as an issue as indicated in the notice of appeal. Counsel's request was refused. Counsel for the appellant thereupon objected to the impaneling of a jury for the reason that the court had no jurisdiction and had no power to order a jury. There were other objections. At the close of the testimony on the part of the defendant the court read to the jury the issues as determined by the trial court and added this charge: "The test of increase will be in the market value." To this counsel for appellant excepted. The jury answered each of the questions in the affirmative and also found the amount of benefit to the lands in each parcel, and upon motion of defendant's attorney the special assessments appealed from were affirmed. On appeal this court at page 549 made the following quotation from Cooley on Taxation, page 449:

"The whole subject of taxing districts belongs to the legislature; so much is unquestionable. The authority may be exercised directly, or, in the case of local taxes, it may be left to local boards or bodies; but in the latter case the determination will be by a body possessing for the purpose legislative power, and whose action must be as conclusive as if taken by the legislature itself."

The court then continues (pp. 549, 550):

"The fixing of the limits of the taxing district, or, in other words, designating the property which will be benefited and hence to be assessed, must necessarily be done by a tribunal representing all parties interested, including the public. In the case before us the common council is such a tribunal. Each lot owner having the right to appeal, it is very obvious that should the jury upon each appeal (in case of several) have the right to fix new limits to the taxing district—that is, to leave out some lots which the common council had included,

and include other lots which the common council had left out—then there might be as many taxing districts as there were juries in such appeals, and endless confusion would be the result. . . .

"But the charter clearly gave to persons interested the right to be heard before the common council upon objections to such assessment, and required the common council to decide upon all objections raised, and then gave to any party feeling aggrieved by such assessment the right of appeal therefrom in the circuit court. This right of appeal therefrom must necessarily give the right to a rehearing upon the pertinent objections so raised before the common council, and so decided adversely to such party. *This, we think, extends to a reexamination of the proper proportion of the whole assessment which each lot or parcel of land should bear."*

This case was followed and commented upon in *Dickson v. Racine* (1884), 61 Wis. 545, 548, 21 N. W. 620, where it was said:

"In *Teegarden v. Racine* it was held, after a careful consideration of the case, that upon an appeal by a landowner from an assessment for benefits, the action of the common council was conclusive upon the question as to what property was benefited and hence should be assessed; but *that its decision as to the proper portion of the whole assessment to be borne by each lot* might be reviewed on the appeal."

Both cases were cited and affirmed in *Land, Log & Lumber Co. v. Brown* (1889), 73 Wis. 294, 40 N. W. 482. Referring to the same subject matter in *State ex rel. Baltzell v. Stewart* (1889), 74 Wis. 620, 631, 43 N. W. 947, the court said, citing the *Teegarden* and *Dickson Cases:*

"Authority was given the common council to define the taxing districts for local taxation; and it was held that the common council possessed *pro hac vice* the legislative power, whose action was as conclusive in the matter as if taken by the legislature itself." See also *Meggett v. Eau Claire* (1892), 81 Wis. 326, 51 N. W. 566.

Under ch. 275 the power to fix the limits of the taxing district was conferred upon the board of assessment (sec. 5 (2)), subject to approval and confirmation by the common council. It having been declared by legislative authority that the property of the appellants is within the taxing district, it is conclusively presumed in law that the property is benefited. The only questions open to review on appeal by property owners are those relating to the amount of the assessments.

It is considered that sec. 11, ch. 275, by its terms restricts the appeal to a consideration of the amount of damages and benefits and whether the benefits are assessed proportionally as required by the act. By the terms of the act, no action may be maintained either at law or in equity for injuries sustained by the assessment of damages and benefits on account of such acts and proceedings.

This conclusion is supported by other provisions of ch. 275. Sec. 20 (3) provides that if upon any appeal the damages shall be increased or benefits reduced, the increase of damages to be paid or the difference in benefits to be received by such city shall be provided and made up out of any funds available to pay the city's share of the cost of the improvement.

Sec. 20 (3), ch. 275, makes an elaborate provision for readjustment following a trial of the issue on appeal. These provisions would be totally inapplicable if upon a trial the whole groundwork of the assessment was open to review and the assessment might be set aside in toto. While as pointed out in the brief of appellants there is language in the act somewhat inconsistent with this position, upon the authority of the cases cited and a consideration of the whole act, it is held that the trial court was clearly right as to what was before the court for trial upon the appeal except as to the question of whether the property was benefited. The benefit district having been established by the common council under the doctrine of the *Teegarden Case, supra,* the presumption is that all property within the district is benefited. The only issues

that can be presented to the court on appeal are those relating to the assessment of damages and benefits :

(1) Does the amount assessed against the property in question exceed the benefits thereto?

(2) If the amount assessed against the property exceeds the benefits, what is the amount of such excess?

(3) Is the assessment against the property in question in proportion to the benefits thereto?

In submitting the issues to the jury, it must be borne in mind that property cannot be assessed for an improvement in a greater amount than it is benefited. The whole theory of special assessment is that the property owner is merely rendering an equivalent for the benefit which he has received.

In *Holton v. Milwaukee* (1872), 31 Wis. 27, 41, Chief Justice DIXON, speaking for the court, said :

"If the assessment has been truly and justly made, the fact must be regularly ascertained to be, what the theory of the proceeding supposes it to be, viz. : That the party whose money is taken, is locally and peculiarly benefited, over and beyond the ordinary benefit which, as one of the community, he receives in all public improvements, to the precise extent of the assessment."

While the language was quoted from 23 Conn. 189, it was approved by the court.

Where the assessment is required to be apportioned according to benefits the assessment cannot be apportioned to the abutting owners upon the basis of valuation.

In *Welch v. Oconomowoc* (1928), 197 Wis. 173, 175, 221 N. W. 750, the court said :

"A special assessment based on frontage might come much nearer compliance with the rule that such assessment must be based upon benefits conferred than does this one based upon the assessed valuation of the property. But the fact that an assessment is based upon frontage is a circumstance so significant as to arouse suspicion."

Apparently no one has yet come forward with a formula for the apportionment of assessments according to benefits. It is like fixing value, a mysterious and elusive process, which is well illustrated in the determination of the amount which should be awarded for mental suffering. It is easy to say that some sum is too much and that some other sum is too little, yet juries by some process do agree upon a sum which they consider the correct measure to be applied and the sum so arrived at is generally approved by the courts.

In determining what issues are for trial upon the appeal in these cases, it is necessary for us to consider the procedure of the common council under the provisions of ch. 275. The boundaries of the benefit district were established by resolution of the common council on March 15, 1937, and the city attorney was directed to proceed with the condemnation of the property needed. The board of assessment met on April 10, 1939, pursuant to direction of the common council to hear such testimony as any party interested might desire to offer as to damages and benefits. (Sec. 9 (3).) Hearings were continued from February 5, 1940, to June 20, 1940. In June, 1940, when testimony was being offered on behalf of the city as to benefits, the appellants or some of them appeared and cross-examined the city's witnesses. Although they had notice and ample opportunity to do so, none of the appellants made objection to the assessment except:

Nakina Realty Company objected to the assessment of benefits on the ground that its property was not benefited, the same objection being made in both of its cases.

Majestic Realty Corporation objected solely on the ground that the property was not benefited.

Wisconsin Electric Power Company objected on the ground that the proposed assessment was greatly in excess of any benefit which would accrue to the property in question.

Lamasco Realty Company appeared by attorney before the board and cross-examined witnesses but upon the record made no objection to the assessment.

Mariner Realty Company appeared before the board to cross-examine witnesses but made no formal objection.

A. Gettelman Brewing Company's controversy relates to the taking of the property and the amount of just compensation therefor. This case involves the taking of property under the provisions of ch. 275. The issue in such a case is the amount of just compensation to be paid to the owner. The right of the owner to appeal under ch. 275 is the right to appeal from that determination and gives the owner a right to have a judicial determination as to the amount of just compensation to which he is entitled. It is in effect a condemnation proceeding and no pleading or objection is required in such a proceeding unless a statute requires it. 18 Am. Jur. p. 970, sec. 326, and cases cited, 29·C. J. S. p. 1233, sec. 262.

Standard Oil Company under date of September 3, 1940, filed a written objection addressed to the board of assessment objecting to the assessment of $4,450 on the ground that said assessment was contrary to the undisputed evidence produced before said board of assessment and was not supported by any credible evidence whatever, and that said property had been seriously damaged and its value lowered by said alleged improvement of Kilbourne avenue instead of being benefited thereby.

Where a property owner has an opportunity given him, in proceedings for the making of a public improvement and the levying of an assessment therefor, to appear and contest the assessment before authorities whose duty it is to pass upon objections to assessments, the determination of the authorities is final and if the property owner fails to avail himself of the opportunity provided he thereby admits the finality of the determination and is estopped to raise the question in subsequent proceedings. This rule applies where the assessment is in excess of benefits, where there is a disproportionate assessment, where it is claimed there is no benefit, where the assessment is without regard to benefit, and in some other in-

stances not material here. Upon this subject the case of *Bartlesville v. Holm* (1914), 40 Okla. 467, 139 Pac. 273, 9 A. L. R. 627, is a leading authority. That was a suit in equity to enjoin the collection of a special assessment on the ground that the necessary steps were not taken by the mayor and council to confer jurisdiction upon the municipal authorities to make the assessment. The court said (p. 471) :

"There is a growing tendency on the part of the courts to require prompt action on the part of the property owner in interposing objections, so that they may be made in time to enable the municipality to correct any defects in the proceedings under which public improvements are being made. . . .

"The great weight of authority leans toward a rather strict and technical application of the doctrine of estoppel, and is to the effect that, where there is jurisdiction, one who stands idly by while a public work is being prosecuted, with full knowledge, by himself or agent, that large expenditures are being made for such public improvement which will benefit his property, or fails to appear at the proper time and present his objections, will not, after the work is completed, be afforded relief against assessments levied against the property benefited to pay for such work, either in courts of law or equity."

In support of this proposition the court cites *State ex rel. Schintgen v. Mayor and Common Council of La Crosse* (1898), 101 Wis. 208, 77 N. W. 167.

While this was said in an equity case, the principle applies in all cases of failure to seasonably object where the law provides a time and place for the hearing and consideration of such objections. See the following Wisconsin cases: *Sexsmith v. Smith* (1873), 32 Wis. 299; *Miller v. Prairie du Chien & McGregor Ry. Co.* (1874) 34 Wis. 533; *Pier v. Fond du Lac* (1875), 38 Wis. 470; *State ex rel. Flint v. Fond du Lac* (1877), 42 Wis. 287; *Wright v. Forrestal* (1886), 65 Wis. 341, 27 N. W. 52; *Wells v. Western Paving & Supply Co.* (1897) 96 Wis. 116, 70 N. W. 1071; *Hennessy v. Douglas County* (1898), 99 Wis. 129, 74 N. W. 983;

*Beaser v. Barber A. P. Co.* (1904) 120 Wis. 599, 98 N. W. 525; *Lawton v. Racine* (1909), 137 Wis. 593, 119 N. W. 331; *Spence v. Milwaukee* (1910), 143 Wis. 47, 126 N. W. 22. See also exhaustive article to be found in 9 A. L. R. 634 *et seq.;* Hamilton, Law of Special Assessments, p. 749. sec. 758, p. 752, sec. 767; 2 Page & Jones, Special Assessments, p. 1703, sec. 1015 *et seq.*

Appellants argue that they were foreclosed from attacking the proceedings otherwise than by appeal by the terms of the act. We do not so understand it. Sec. 11, ch. 275, provides:

"An appeal to the circuit court as provided in this act shall be the only remedy for damages sustained by the acts or proceedings of the city in the matter to which such assessment relates, and shall be the exclusive method of review of any assessment of benefits made therein; and no action at law or in equity shall be had or maintained for such injuries on account of such acts or proceedings."

Reliance is placed by appellants upon *Newton v. Superior* (1911), 146 Wis. 308, 130 N. W. 242, 131 N. W. 986, in which case it was held that the provision for appeal contained in the statute there under consideration excluded all other remedies. The material part of the statute there under consideration (ch. 539, Laws of 1909, sec. 959—30*g*) relating to appeal is as follows (p. 311):

"The appeal aforesaid shall be the only remedy of the owner of any parcel of land, or of any person interested therein, affected by said improvement, *for the redress of any grievance he may have by reason of the making of such improvement,* or of the change of any established grade covered by said report."

The court said (p. 313):

"A study of the context of the new section has led us to the conclusion that the legislature intended that the remedy provided by it should include relief for all grievances of the

property owner arising out of the proceedings taken by the common council and respecting its compliance with the steps required to be taken by the city authorities in the proceedings for making such improvements and assessing the proper proportions of the cost thereof to the property liable therefor. . . . From the various provisions of the act it appears to us that the legislature intended to provide that on such appeal the court should have the right to investigate the proceedings actually taken and to ascertain whether or not there were fatal omissions in the course of the proceedings taken by the municipal authorities in making the improvements, and to award such relief as the actual state of the proceedings demanded to protect the appellants from any wrongful invasion of their rights flowing from the failure to comply with the statutes."

The court distinguished the *Newton Case, supra,* from *Hayes v. Douglas County* (1896), 92 Wis. 429, 65 N. W. 482, where it was held that on an appeal from an order confirming an assessment the parties should be restricted to an investigation of the question of whether the proper amount of benefits had been assessed against the lots in question. The language of ch. 275 relating to the exclusiveness of the appeal much more closely resembles that under consideration in the *Hayes Case* than it does the language of sec. 959—30*g*, Stats.

In *State ex rel. Vaughn v. Mayor and Common Council of Ashland* (1888), 71 Wis. 502, 37 N. W. 809, it was held that where the board of public works and common council of the city have attempted without authority of law to charge upon private property the cost of building a bridge, their proceedings may be reviewed on *certiorari,* although the city charter has provided that an appeal shall be the only remedy to the owner for the redress of any grievance he may have by reason of the making of an improvement or of the amount of the cost thereof charged upon his land. The court further held that the remedy by appeal given by the charter related only to matters within the jurisdiction of the common council.

There can be no doubt that if the council were proceeding either without authority of law or in a manner which rendered their proceedings void the matter could have been presented to a court of competent jurisdiction at a proper time notwithstanding the provisions of sec. 11, ch. 275, already quoted. *Welch v. Oconomowoc* (1928), 197 Wis. 173, 221 N. W. 750; *Milwaukee E. R. & L. Co. v. Shorewood* (1923), 181 Wis. 312, 193 N. W. 94; *Johnson v. Milwaukee* (1876), 40 Wis. 315; *Watkins v. Milwaukee* (1881), 52 Wis. 98, 8 N. W. 823; *Liebermann v. Milwaukee* (1895), 89 Wis. 336, 61 N. W. 1112; *Kersten v. Milwaukee* (1900), 106 Wis. 200, 81 N. W. 948, 81 N. W. 1103; *Spence v. Milwaukee* (1907), 132 Wis. 669, 113 N. W. 38; *Beaser v. Ashland* (1894), 89 Wis. 28, 61 N. W. 77; *Hayes v. Douglas County, supra.*

It is manifest that it is not sufficient for a property owner to appear before the board and merely say "I object," but he should state upon what grounds he objects and give the board of assessment a reasonable opportunity to consider his objections and to present any evidence he may have in support of it. The purpose of the objections and the hearing thereon is to advise the board as precisely as may be of any claimed defect in the assessment, such as that it is not proportional or greater than the benefits so as to give the board a fair opportunity to correct the assessment if it is erroneous.

### STANDARD OIL COMPANY.

In its brief the Standard Oil Company propounds a large number of questions, some of which are disposed of by what has already been said. Five of these questions relate to property forming a part of Juneau park, now and for many years owned by the city. Under no view of the statute do these questions become relevant on appeal from confirmation of benefits and damages by the council. If the council is disposing of municipal property without authority of law as is

contended, it is not a question which can be raised in a special assessment proceeding such as the one before us. Other questions relate to acts of the city of Milwaukee which so far as we can see have no bearing upon the questions to be considered upon appeal from the confirmation of assessments. Other questions propounded are sufficiently answered by comment already made.

It is held that in the two cases of the Nakina Realty Company, in the case of the Majestic Realty Corporation, that of the Wisconsin Electric Power Company, and that of the Standard Oil Company, the appellants are entitled to a trial upon the sole question of whether the amounts assessed against their respective properties are in excess of the benefits thereto, and if so, in what amount.

In the case of A. Gettelman Brewing Company, it is held that it is entitled to a trial *de novo* upon the question of the compensation justly due it on account of the property taken by the city.

In the case of Lamasco Realty Company and in the case of Mariner Realty Company, no objection to the assessment having been made to the board of assessment, no issue is presented for trial upon their respective appeals.

*By the Court.*—In each of the cases of the Nakina Realty Company, in the case of the Majestic Realty Corporation, in the case of the Wisconsin Electric Power Company, in the case of the Standard Oil Company, and in the case of A. Gettelman Brewing Company, subject to such modifications as are made by the foregoing opinion, the interlocutory judgment in each case is affirmed with costs to the respondent. In the case of Lamasco Realty Company and in the case of Mariner Realty Company the judgment is reversed, with directions to dismiss the appeal in each case, with costs to the respondent.

The following memorandum was filed April 2, 1943:

PER CURIAM (*on motion for rehearing*). A motion for rehearing has been made in the case of the Lamasco Realty Company and in the case of the Mariner Realty Company. Subsequent to the making and filing of the motions, the parties in each case entered into the following stipulation:

"Neither the appellant nor the respondent intended by the stipulation of facts or the testimony taken in connection therewith to present any issue to the trial court or to this court as to the scope or sufficiency of the protest and objections to the amount of assessment against its property which the appellant made to the board of assessment at the assessment hearing and at the review of the assessments by said board pursuant to section 9 (3) and (6) of chapter 275 of the Laws of 1931. The facts concerning such appearances were, therefore, not made a part of the record in these proceedings, either by stipulation or otherwise. Said issues were expressly reserved in stipulation of facts for trial in the circuit court and said court did not pass upon them in the interlocutory judgment; expressly stating: 'Upon trial of the issues reserved, it will be determined whether any benefits accrued to appellant's property, and if so the amount thereof.'"

The stipulation was made without prejudice to the rights of either party thereto to proffer or object to proof concerning the appearance of each of said plaintiffs and the nature and scope of the protests and objections made by it to the board of assessment with respect to the amount of the special assessment against its property.

Inasmuch as it appears that the above plaintiffs did in fact object to the assessment against their respective properties and that the principal purpose of the motions for rehearing was to procure a modification of the mandate so that the plaintiffs in the above proceedings would be entitled to a trial upon the sole question of whether the amount assessed against their respective properties is in excess of the benefits thereto, and

if so, in what amount, on the authority of *Canfield v. Bayfield County* (1889), 74 Wis. 60, 41 N. W. 437, 42 N. W. 100:

It is ordered that so much of the mandate as reverses the interlocutory judgment and directs dismissal of the appeal in each case, be and it is withdrawn.

It is further ordered that in each of said cases, the mandate be entered as follows : In the case of Lamasco Realty Company and in the case of Mariner Realty Company, subject to such modifications as are made by the opinion, the interlocutory judgment in each case is affirmed, with costs to the respondent.

It is further ordered that in the above cases, the motion for rehearing be and the same is denied without costs.